NAPPER et al., Appellees,

v.

AMERITECH PUBLISHING, INC., et al., Appellants.

[Cite as *Napper v. Ameritech Publishing, Inc.* (1992), 79 Ohio App.3d 284.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60015, 60016.

Decided April 20, 1992.

*Stewart R. Jaffy,* for appellees.

*Martin S. List, Steven K. Aronoff* and *Alyse A. Martinelli,* for appellant Ameritech Publishing, Inc.

*Lee I. Fisher*, Attorney General, and *Betsey Nims Friedman*, Assistant Attorney General, for appellant Ohio Bureau of Employment Services.

---

FRANCIS E. SWEENEY, Presiding Judge.

Defendants-appellants, Ameritech Publishing, Inc. et al., timely appeal from an order of the court of common pleas reversing the decision of the Unemployment Compensation Board of Review ("board of review") denying appellees unemployment compensation benefits on the basis that they were unemployed due to a labor dispute other than a lockout, pursuant to R.C. 4141.29(D)(1)(a). For the reasons set forth below, we affirm the decision of the trial court.

Plaintiffs-appellees are employees of Ameritech Publishing, Inc. ("A.P.I."). A.P.I. is engaged in the sale and publication of Yellow Pages Directory advertising in Ohio, Indiana, Michigan and Wisconsin. A.P.I. was formed on January 1, 1984 as a result of a court-ordered breakup of American Telephone and Telegraph ("A.T. & T."). A.P.I. continued to recognize the Communications Workers of America ("C.W.A.") as the bargaining representative of the former Indiana Bell, Ohio Bell and Michigan Bell bargaining unit employees who were transferred to A.P.I.

The C.W.A. and A.P.I. continued to operate under the respective bargaining agreements of the various Bell companies. The Ohio Bell Collective Bargaining Agreement, dated September 6, 1983, was due to expire on August 9, 1986, as were the Indiana and Michigan agreements.

A.P.I. and C.W.A. commenced collective bargaining in June 1986 at three separate "tables." The Ohio table involved negotiations covering only Ohio employees. Negotiators at the Ohio table were unable to reach an agreement by August 9, 1986. A.P.I. continued to operate its business after August 11, 1986, and negotiators at the Ohio table reached an agreement September 16, 1986. From August 12, 1986 through September 16, 1986, some bargaining unit employees worked, while others did not. The employees who did not work are the subject of these unemployment claims.

The chief negotiator for the A.P.I. at the Ohio table, Alfred Ramirez, testified that the original contract expired August 9, 1986. That contract was extended until August 11, 1986 at 7:00 p.m. Ramirez testified that the union requested an extension of the agreement beyond that date, but that the A.P.I. was not willing to formally extend the agreement. He felt that it would not be advantageous, strategically, to enter into additional extensions. Ramirez told C.W.A. bargaining representatives at the table that employees could continue to work at A.P.I. under the same terms and conditions of employment as the expired contract. Ramirez testified that his refusal to formally

extend the contract was a strategic move to "intensify the pace of bargaining." On August 12, 1986, A.P.I. prepared and distributed a memorandum to C.W.A. representatives and employees, marked as Exhibit "N," stating that there was no lockout and that work was available under the terms and conditions of the previous collective bargaining agreement. The A.P.I. prepared a recorded telephone message for its employees to receive strike information. This message reported that employees would receive compensation and benefits in effect prior to the contract expiration. It did not, however, offer the employees an extension of all terms and conditions of the expired contract.

Ramirez admitted that in previous years, where there had been a contract expiration, sales employees had been permitted to take their paperwork with them and perform their work despite a strike. However, this year, the employees were instructed to turn in their work, except for one day's work.

Ms. Perpar, a company witness, testified that the employees' keys were picked up either on the Friday or Monday before the contract expired. The contracts of the sales people were picked up on Friday.

David Deering, the chief union negotiator, testified that he asked the A.P.I. to extend the contract on numerous occasions and that A.P.I. refused to formally extend the contract.

Based upon the above evidence, the board of review disallowed the claimants' unemployment claims on the basis that the claimants' unemployment was due to a labor dispute other than a lockout, pursuant to R.C. 4141.-29(D)(1)(a). The court of common pleas reversed the board of review's finding on appeal. Appellants now timely appeal the court of common pleas' decision, raising two assignments of error for our review.

### Assignment of Error No. I

"The court below erred in reversing the board of review, in awarding unemployment compensation benefits to claimants who voluntarily engaged in a strike despite being offered work at the same terms and conditions as existed under the expired collective bargaining agreement, and in finding that claimants' unemployment was due to a lockout rather than a strike."

Appellants contend the trial court erred in finding that the board of review was unreasonable and unlawful in denying appellees' unemployment benefits based on a decision that appellees' unemployment was due to a labor dispute other than a lockout pursuant to R.C. 4141.29(D)(1)(a). This argument is without merit.

An order of the common pleas court which is based upon a determination of the manifest weight of the evidence may be reversed by this court only upon a

showing that the court abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 243, 463 N.E.2d 1280, 1282. In other words, that court's decision must be without rational basis and clearly wrong. *Id.* at 162, 11 OBR at 244, 463 N.E.2d at 1283.

R.C. 4141.29(D)(1)(a) provides that benefits are not payable to claimants who are unemployed due to a labor dispute other than a lockout at any establishment owned or operated by the employer.

A "lockout" has been defined as a "cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." *Bays v. Shenango Co.* (1990), 53 Ohio St.3d 132, 133, 559 N.E.2d 740, 742. The Supreme Court has held that "the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, *first* refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." (Emphasis added.) *Id.* at 135, 559 N.E.2d at 743. " 'If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification of unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.' " *Id.* at 134–135, 559 N.E.2d at 743, quoting *Erie Forge & Steel Corp. v. Unemp. Comp. Bd. of Review* (1960), 400 Pa. 440, 443–445, 163 A.2d 91, 93–94.

■ In the present case, the employer admits that it was unwilling to extend the contract despite the continued requests of union officials. The employer admits that its refusal to formally extend the contract was intended as a negotiating strategy to "intensify the pace of bargaining." We find that this bargaining maneuver by the employer demonstrates a lack of good faith and a refusal to maintain the status quo after the contract had technically expired. While the employer contends its offer to informally allow continued employment under the terms and conditions of the expired contract showed a desire to maintain the status quo, the employer's conduct in refusing to formally extend the contract gave employees reasonable doubts as to their continued employment and as to whether they were assured a continuation of all rights provided for under the expired contract. The employees' doubts were compounded by the employer's telephone hotline message, which promised only that employees would receive compensation and benefits in effect prior to contract expiration. This offer did not guarantee an extension of all terms and conditions of the expired contract. Thus, the employer's "strategic" offer was conflicting and did not unequivocally express whether claim-

ants might have given up some rights by continuing to work, such as the right to have a union representative present during a disciplinary action.

Certainly, the employer here was aware that its refusal to extend the contract would raise doubts as to whether its counteroffer gave employees all rights that a contract extension would have provided. In fact, we believe that the employees' doubts are precisely what the employer counted on in order to gain a strategic advantage at the bargaining table and to "intensify the pace of bargaining." We cannot condone such bad faith conduct by the employer in collective bargaining negotiations.

We, therefore, hold that where employees offer to extend an expired contract, the failure of the employer to accept such an offer is unreasonable, in bad faith, and constitutes a lockout. Accordingly, the trial court did not err in concluding that the board of review's determination was unlawful and unreasonable.

Assignment of Error No. I is overruled.

Assignment of Error No. II

"The court below erred in reversing the 15–page decision of the board of review with the issuance of a 'postcard' order and a summary civil case status form, without any explanation whatsoever as to the basis of that reversal, and particularly without any explanation whatsoever as to the basis of the court's ruling that the decision of the board of review was unreasonable and unlawful, especially in light of the limited scope of review of the decisions of the board of review afforded to the court below."

■ Appellants argue the trial court erred in failing to explain the basis of its ruling that the board of review was "unreasonable and unlawful." This argument is without merit.

Pursuant to R.C. 4141.28(O), the court of common pleas is required to determine whether the decision of a board of review is "unlawful, unreasonable or against the manifest weight of the evidence." We have held that the common pleas court's failure to specify the basis of its reversal does not constitute noncompliance with the statute. *Berlin v. Admr., Bur. of Emp. Services* (1985), 27 Ohio App.3d 59, 60, 27 OBR 77, 79, 499 N.E.2d 1252, 1254.

Accordingly, we conclude that the court of common pleas' judgment that the board of review's decision was "unlawful and unreasonable" was in compliance with R.C. 4141.28(O) and that it was not required to state its basis for reversing the decision.

Assignment of Error No. II is overruled.

*Judgment affirmed.*

Patton and Spellacy, JJ., concur.