CARTER et al., Appellants,

v.

OHIO UNEMPLOYMENT COMP. BD. OF REVIEW, et al., Appellees.

[Cite as *Carter v. Ohio Unemp. Comp. Bd. of Review* (1995), 101 Ohio App.3d 527.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–94–015.

Decided March 3, 1995.

*Ronald G. Macala* and *Salvatore J. Falletta,* for appellants Brian P. Carter et al.

*John D. Latchney,* for appellants Tim A. Maschari et al.

*Betty D. Montgomery,* Attorney General, *Betsey Nims Friedman* and *Angela R. Stokes,* Assistant Attorneys General, for appellee Administrator, Bureau of Employment Services et al.

*William F. Snyder,* for appellee G. & C. Foundry Company.

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Erie County Court of Common Pleas which affirmed the decision of the Ohio Unemployment Compensation Board of Review which found that appellants are not entitled to unemployment compensation.[1]

Appellants Brian Carter et al. have set forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred to the prejudice of appellants by making an unreasonable legal conclusion from essentially undisputed evidence by its conclusion determining that appellants refused to continue the 'status quo,' rather than the employer.

"Assignment of Error No. 2:

"The trial court erred as a matter of law in adopting the conclusion of the Board of Review in which it was determined that the workers needed 'to express a willingness to continue to work' after July 30, 1992, in order for a lock-out to have existed.

---

1. Sixty-nine former employees of G. & C. Foundry Company have appealed the trial court's judgment. A majority of the appellants have appealed and filed a brief as Brian Carter et al., and four others have appealed and filed a brief with separate assignments of error as Tim A. Maschari et al. The two cases have been consolidated for appeal to this court. Appellees Administrator, Ohio Bureau of Employment Services, and G. & C. Foundry Company each have filed briefs in answer to the two appellants' briefs.

"Assignment of Error No. 3:

"The trial court erred to the prejudice of appellants in this matter by its failure to remand the case for a determination regarding the 'ending date of the alleged labor dispute.'"

Appellants Tim A. Maschari et al., in a separate brief, set forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred as a matter of law in coming to an unreasonable legal conclusion based on essentially undisputed facts by determining that appellants were the first party to alter the status quo, rather than the employer.

"Assignment of Error No. 2:

"The trial court erred as a matter of law in failing to remand the case for a determination as to the 'ending date' of the alleged labor dispute."

The facts that are relevant to the issues raised on appeal are as follows. All appellants were employees of G. & C. Foundry Company and members of the United Electrical, Radio and Machine Workers of America, Local 714. During the relevant time period, relations between the union and the employer were governed by a collective bargaining agreement, which was to terminate on June 30, 1992. On April 22, 1992, the employer notified the union by letter that it was proposing that "revisions and modifications or additions be made to the existing Agreement." On April 27, 1992, the union notified the employer by letter of its desire "to modify our existing collective bargaining agreement." Negotiations for a new contract began on May 26, 1992, but the parties were unable to reach agreement. On June 29, 1992, the employer submitted its final offer. On June 30, 1992, appellants voted to strike but continued to work. On July 6, 1992, the employer received a letter from the union which contained an offer to meet on July 7 for further negotiations and stated that "unless negotiated otherwise, the current wages, benefits and working conditions will remain the same." The parties met on July 7 but did not reach agreement. The union then announced that the employer's final offer had been rejected and a strike vote taken. On July 8, the employer wrote a letter to all hourly employees, in which it explained that the company had been unable to reach an agreement with the union and offered them, as of July 13, 1992, continuing employment under the terms of the final offer. On July 13, the employer posted a notice which stated, "If you are at work today, you are working under the terms of our final offer. If you don't accept that, you are free to leave and we will seek permanent replacements." Appellants continued to work, and on July 30, 1992, the employer received a letter stating that the union was going to strike at midnight on that date, which it did.

Appellants then filed claims for unemployment compensation. Since R.C. 4141.28(D)(1)(a) requires the Administrator of the Ohio Bureau of Employment Services to conduct a hearing when there is reason to believe that the unemployment of twenty-five or more individuals is related to a labor dispute, a hearing was held on September 28, 1992 to determine the reason for unemployment.

On October 23, 1992, the hearing officer issued a decision in which it determined the applicable law to be R.C. 4141.29(D)(1)(a), which provides as follows:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"(1) For any week with respect to which the administrator finds that:

"(a) *His unemployment was due to a labor dispute other than a lockout*[.]" (Emphasis added.)

The hearing officer found further that (1) during the negotiations which began on May 26, 1992, neither party offered or asked to continue operating according to the terms of the old contract; (2) on June 29, the employer submitted its final offer, which was not accepted by the union; (3) on July 2, the union advised the employer that it had voted to strike; (4) after the expiration of the contract on June 30, the employer unilaterally imposed its final offer and proceeded to operate according to those terms and conditions; (5) union members continued to work until midnight, July 30, when they advised the employer they were engaging in a work stoppage; (6) the employer continued to operate until the time of the hearing according to the terms of the final offer and paid employees according to those terms; and (7) the employer disrupted the status quo when it unilaterally implemented its final offer and thereby created a lockout even though the employees continued to work. The hearing officer ruled that because appellants were unemployed due to a lockout they were entitled to unemployment compensation.

On November 5, 1992, the employer filed an application to appeal the administrator's decision. The Unemployment Compensation Board of Review granted the application, and on April 15, 1993 a hearing was held. On June 17, 1993, the board held that appellants were unemployed due to a labor dispute other than a lockout within the meaning of Ohio unemployment compensation law and reversed the decision of the administrator. The board found that the evidence clearly established that appellants were not willing to work after July 30, 1992 under any conditions and that they had worked for thirty days after the expiration of the old contract and after their strike vote only because they felt they had to do so under the National Labor Relations Act. The board further found that the union had not offered, either expressly or impliedly, to work after July 30 under the terms of the expired contract and that its members therefore

did not become unemployed due to a lockout when the employer implemented its final offer.

On July 19, 1993, appellants filed a notice of appeal in the Erie County Court of Common Pleas, and on January 14, 1994, oral arguments were heard. On February 25, 1994, the trial court found that the decision of the board was reasonable, lawful and not against the manifest weight of the evidence and affirmed the board's ruling. A timely appeal was filed with this court.

The first and second assignments of error of appellants Carter et al. and the first assignment of error of appellants Maschari et al. will be considered together since they present the same arguments. Appellants assert that the trial court erred in affirming the board's ruling that they were the first party to alter the status quo, thereby creating "a labor dispute other than a lockout." Appellants assert that the letter they sent the employer on July 6, which stated that "unless negotiated otherwise, the current wages, benefits and working conditions will remain the same," constituted an offer to continue working under the terms of the old agreement and was a manifestation of their intent to maintain the status quo. Appellants argue that, when the employer unilaterally implemented its final offer on July 13, 1992, it altered the status quo and created a lockout. Appellants further assert that they continued to work for a reasonable time under the terms of the existing agreement.

Appellees respond that appellants' unemployment was due to a labor dispute other than a lockout. Appellees assert that appellants never offered to continue working under the terms of the old contract for a reasonable time and that the employer did not impose unreasonable or intolerable conditions for continued employment, both of which would have had to occur in order for a lockout to exist. They assert further that appellants were never willing to work under the terms of the old contract and continued to work for thirty days after the contract expired only because they had to in order to comply with federal labor law.

The Supreme Court of Ohio first addressed the issue of what conditions create a lockout in *Zanesville Rapid Transit, Inc. v. Bailey* (1958), 168 Ohio St. 351, at 355, 7 O.O.2d 119, at 122, 155 N.E.2d 202, at 205–206:

"The imposition by the employer of changes in working conditions or wages, even though they deprive the employees of some advantage they already possess, does not necessarily constitute a lockout. * * * [I]n order to constitute a lockout, the conduct of the employer in laying down terms must lead to unemployment inevitably in the sense that the employees could not reasonably be expected to accept the terms and, in reason, there was no alternative for them but to leave their work."

While the court's focus in *Zanesville* was on whether the employer imposed unreasonable conditions which left the employees no alternative but to stop working, the Supreme Court adopted another analysis of the conditions leading to a lockout in *Bays v. Shenango Co.* (1990), 53 Ohio St.3d 132, 559 N.E.2d 740. In *Bays,* the court reasoned that the actions of both the employer and the employees must be scrutinized in order to determine which party first refused to continue operations under the status quo after the contract expired. In its analysis, the *Bays* court adopted the status-quo test as developed in *Erie Forge & Steel Corp. v. Unemp. Comp. Bd. of Review* (1960), 400 Pa. 440, 443–445, 163 A.2d 91, 93. The *Erie Forge* court focused on two conditions in its determination of whether a work stoppage was the responsibility of the employees or the employer: first, whether the employees offered to continue working for a reasonable time under the pre-existing terms so as to avoid a work stoppage pending final settlement of the contract negotiations; and, second, whether the employer agreed to allow work to continue for a reasonable time under the pre-existing terms pending further negotiations. The *Erie Forge* court held that because the employer refused to extend the contract and maintain the status quo after a good faith offer by the union to work under the old contract indefinitely, the resulting work stoppage constituted a lockout.

The *Bays* court and other Ohio courts considering similar issues both before and after *Bays* made their analyses based on facts which included in each case an offer by employees to continue working under the terms of an expired contract during negotiations and a refusal by the employer to accept the offer. In each case, the court held that the employer's failure to accept employees' offer to extend an expired contract for a reasonable time constituted a lockout. See *Oriti v. Bd. of Review, Ohio Bur. of Emp. Serv.* (1983), 7 Ohio App.3d 311, 7 OBR 394, 455 N.E.2d 720. *Napper v. Ameritech Publishing, Inc.* (1992), 79 Ohio App.3d 284, 607 N.E.2d 91. It is clear from the cases considered by Ohio and other state courts that a good faith offer by the employees to continue working under the terms of the expired contract while negotiations continue is a decisive factor in determining whether a lockout exists.

The standard of review that the trial court is to apply to board of review decisions is set forth in R.C. 4141.28(O) as follows:

"Any interested party * * * may appeal from the decision of the board to the court of common pleas. * * * If the court finds that the decision was *unlawful, unreasonable, or against the manifest weight of the evidence,* it shall reverse and vacate such decision or it may modify such decision * * *; otherwise such court shall affirm such decision." (Emphasis added.)

■ The Supreme Court of Ohio set forth the standard to be applied by this court when reviewing a trial court's judgment in an appeal from an administrative

agency in *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 267:

"In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. *The appellate court is to determine only if the trial court has abused its discretion.*" (Emphasis added.)

After a thorough review of the record of proceedings before the trial court and the board of review as summarized above, this court finds that (1) on June 30, 1992, the date the old contract was to expire, appellants voted to strike and notified the employer of that strike vote by a letter dated July 2, 1992, in which they also offered to meet again with the employer and stated that "unless negotiated otherwise, the current wages, benefits and working conditions will remain the same"; (2) that language, even though conveyed in conjunction with the notice of the strike vote, constituted a good faith offer and notice of intent to continue working under the terms of the old contract for a reasonable period of time during negotiations; (3) under these conditions the union's strike vote and notification thereof to the employer, without actually going out or setting a date certain for the strike, did not constitute a change in the status quo; (4) the notice posted by the employer on July 13, 1992 constituted an express refusal to accept the union's offer to continue to work under the old contract while negotiations continued; and (5) the trial court abused its discretion when it found that the decision of the board of review that appellants were the first to alter the status quo and were unemployed due to a labor dispute other than a lockout was not unlawful, unreasonable or against the manifest weight of the evidence.

Accordingly, the first and second assignments of error of appellants Brian Carter et al. and the first assignment of error of appellants Tim Maschari et al. are found well taken.

The sole issue remaining for this court to consider is the claim by appellants Brian Carter et al. in their third assignment of error and by Tim Maschari et al. in their second assignment of error that the trial court erred in failing to remand the case to the board for a determination of the ending date of the alleged labor dispute. Appellants assert that the board's failure to rule on this question was arbitrary, unreasonable and contrary to law and argue that it was within the board's discretion to consider the matter.

In their appeal to the court of common pleas, appellants asserted that the board erred by failing to make a finding as to the ending date of the labor dispute, which appellants claim was either late October 1992, when permanent replacements were hired thereby depriving appellants of the ability to return to

work, or early February 1993 when the employer refused to reinstate workers after they made an across-the-board offer to return to work.

Appellees respond that the board did not have original jurisdiction to consider the ending date of the labor dispute because the question had not been before the administrator at the initial hearing to determine the reason for unemployment. Appellees state that the administrator had not ruled on this question because pursuant to statute he is to examine each weekly claim for benefits separately, and at the time of the initial applications for benefits which gave rise to the hearing there were no permanent replacements, and the only issue for consideration was whether there was a lockout or other labor dispute.

R.C. 4141.28(D)(1)(a), which provides for the hearing to determine the reason for unemployment, also provides that "[a] similar hearing * * * may be scheduled when there is a dispute as to the duration or ending date of the labor dispute." It is clear from the record, however, that at the time of the original hearing on September 28, 1992 the issue before the administrator was the reason for unemployment, not the duration of the labor dispute. The administrator made a finding that appellants were unemployed due to a lockout, and the employer appealed that ruling. The question of the duration of the dispute was not before the board of review, and the trial court therefore did not abuse its discretion by not remanding the case for determining that question. Accordingly, the third assignment of error of appellants Brian Carter et al. and the second assignment of error of appellants Tim Maschari et al. are not well taken.

On consideration whereof, this court finds that substantial justice was not done the parties complaining, and the judgment of the Erie County Court of Common Pleas is reversed. Costs of this appeal are assessed to appellees.

*Judgment reversed.*

GLASSER and SHERCK, JJ., concur.