BAYS ET AL., APPELLANTS, *v.* SHENANGO COMPANY ET AL., APPELLEES.

[Cite as Bays *v.* Shenango Co. (1990), 53 Ohio St. 3d 132.]

(No. 89-1198—Submitted May 29, 1990—Decided August 22, 1990.)

*Stewart Jaffy & Associates Co.,*

*L.P.A.*, and *Stewart R. Jaffy*, for appellants.

*Day, Ketterer, Raley, Wright & Rybolt, William S. Cline* and *Catherine A. Pastore*, for appellee Shenango Company.

*Anthony J. Celebrezze, Jr.*, attorney general, *Merl H. Wayman* and *Merrill H. Henkin*, for appellee Administrator, Ohio Bureau of Employment Services.

ALICE ROBIE RESNICK, J. R.C. 4141.29(D)(1)(a) provides in part:

"Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"(1) For any week with respect to which the administrator finds that:

"(a) His unemployment was due to a labor dispute *other than a lockout* at any factory, establishment, or other premises located in this or any other state and owned and operated by the employer by which he is or was last employed; and for so long as his unemployment is due to such labor dispute. * * *" (Emphasis added.)

Appellants contend that because their unemployment was due to a lockout by Shenango, they were qualified to receive unemployment compensation benefits pursuant to R.C. 4141.29(D)(1)(a). Shenango and the Ohio Bureau of Employment Services reject this contention and argue that appellants' unemployment was due to a labor dispute other than a lockout, or, in other words, a strike.

A "lockout" has been defined by this court as "* * * a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms. *Iron Molders' Union* v. *Allis-Chalmers Co.*, 166 F., 45, 52, 20 L.R.A. (N.S.), 315, 91 C.C.A., 631; 25 Words and Phrases, 566; 33 Ohio Jurisprudence (2d), 189, Section 65.

"Such a definition does not circumscribe all the manifestations of an alleged lockout situation. It does not, of course, confine a lockout to an actual physical closing of the place of employment. See *Barnes* v. *Hall*, 285 Ky., 160, 146 S.W. (2d), 929." *Zanesville Rapid Transit, Inc.* v. *Bailey* (1958), 168 Ohio St. 351, 354, 7 O.O. 2d 119, 121, 155 N.E. 2d 202, 205.

This court in *Leach* v. *Republic Steel Corp.* (1964), 176 Ohio St. 221, 223-224, 27 O.O. 2d 122, 123, 199 N.E. 2d 3, 5, distinguished the term "strike" from "labor dispute":

"As generally understood, a 'strike' is a cessation of work by employees in an effort to obtain more desirable terms with respect to wages, working conditions, etc., whereas a 'labor dispute' is of a broader scope and includes a *controversy* between employer and employees concerning wages, working conditions or terms of employment."

In its discussion of when a strike exists, this court in *Baker* v. *Powhatan Mining Co.* (1946), 146 Ohio St. 600, 33 O.O. 84, 67 N.E. 2d 714, relied on a pertinent Colorado Supreme Court decision, *Sandoval* v. *Indus. Comm.* (1942), 110 Colo. 108, 130 P. 2d 930. When determining whether employees had engaged in a strike, the *Sandoval* court looked at which party, the union or the employer, sought to change the status quo. The court determined that the employer had maintained the status quo because it had made employment available to the employees under the terms of the then expired contract. Because the employees refused to work unless there was a change in the status quo, this "constituted a demand for a modification of working conditions and rates of pay and * * * their refusal to work until there was a compliance with such demand, did constitute a strike." *Sandoval, supra*, at 122, 130 P. 2d at 937.

The status-quo test was fully developed in *Erie Forge & Steel Corp.* v. *Unemp. Comp. Bd. of Review* ("Vrotney Unemployment Compensation Case") (1960), 400 Pa. 440, 443-445, 163 A. 2d 91, 93-94:

"In the very delicate and sensitive negotiations which are involved in the development of a new collective bargaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. Neither an adamant attitude of 'no contract, no work' on the part of the employees, nor an ultimatum laid down by the employer that work will be available only on his (employer's) terms, are serious manifestations of a desire to continue the operation of the enterprise. While either or both of these positions may legitimately be taken by the parties during the bargaining negotiations prior to the expiration of the existing contract, when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under * * * the Unemployment Compensation Law, * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting

work stoppage constitutes a 'lockout' and the disqualification of unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply."

The court of appeals in *Oriti* v. *Bd. of Review* (1983), 7 Ohio App. 3d 311, 7 OBR 394, 455 N.E. 2d 720, adopted the "Vrotney" test to a factual situation similar to the one in the case before us and held:

"* * * [W]here employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout unless it is demonstrated that the employer has a compelling reason for failing to so agree such that the extension of the contract would be unreasonable under the circumstances." *Id.* at 314, 7 OBR at 398, 455 N.E. 2d at 724.

The status-quo test requires that actions of both the employer and the union be scrutinized in order to ascertain whether the parties sought to maintain the status quo. "Since the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Philco Corp.* v. *Unemp. Comp. Bd. of Review* (1968), 430 Pa. 101, 103, 242 A. 2d 454, 455.

The Board of Review in the instant case found that Shenango did not maintain the status quo. We agree.

The agreement entered into between Local 6968 and Shenango included both quarterly cost-of-living adjustments as well as "roll-ins." At the time of the negotiations, the most recent cost-of-living adjustment had been made on July 1, 1985. The "roll-in" provided that on September 30 of each contract year, an amount equal to the cost-of-living adjustment then payable would be included in the standard hourly wage scale. Thus, according to the contract, on September 30, 1985, Shenango was obligated to "roll in" this final cost-of-living adjustment into the base wage rate.

In its offer to extend the contract for thirty days, however, Shenango excluded the last roll-in which was to be paid on September 30, 1985 and was part of the prior existing contract. An employer deviates from the status quo if it refuses to allow work to continue for a reasonable time *under the existing terms and conditions of employment* while negotiations continue. See *Erie Forge, supra; Oriti, supra.* Here, Shenango refused to accept the obligations as set forth in the 1982 contract. We also note that the record contains no evidence that Shenango had a compelling reason to refuse to maintain the status quo. See *Oriti, supra.* Hence, we find that Shenango did not maintain the status quo.

We turn next to whether the union representing the claimants offered to maintain the status quo. "* * * [A] determination of which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing, must be made in order to conclude whether work stoppage was the result of a strike or lockout. * * *" (Emphasis deleted.) (Citation omitted.) *Lozaro* v. *Commw. Unemp. Comp. Bd. of Review* (1985), 91 Pa. Commw. 428, 431-432, 497 A. 2d 680, 682.

The Board of Review herein determined that the union, on September 27, 1985, offered to extend the agreement for one year, including the same

formula for computing cost-of-living adjustments. The board determined that this offer of the union did not maintain the status quo because of the inclusion of four additional cost-of-living adjustments. The court of common pleas, in its findings of fact, stated that the union's proposal of a one-year extension was made with the same cost-of-living adjustment as contained in the contract. It concluded that the employees offered to continue working under the terms of the pre-existing agreement, and thus, attempted to maintain the status quo. The court determined that the board's finding that the employees did not offer to work under the terms of the existing agreement was against the manifest weight of the evidence and contrary to law. The court of appeals reversed the trial court.

This court must decide whether the offer by the union to work under a pre-existing contract which included established cost-of-living adjustments is an offer to maintain the status quo. We hold it is.

Here, the union sought to maintain the status quo by offering to work under terms of the 1982 agreement pending further negotiations. By doing so, we find that the union was maintaining the status quo. The union's offer to work under the pre-existing agreement would necessarily include cost-of-living adjustments since these adjustments were included in the original 1982 contract. Indeed an, offer which did not include previously negotiated cost-of-living adjustments would deviate from the status quo.

We find pursuant to R.C. 4141.28 (O) that the conclusion of the common pleas court determining that the decision of the Board of Review was against the manifest weight of the evidence and contrary to law is supported by the record. Hence, the judgment of the court of appeals is reversed and the judgment of the court of common pleas is reinstated.

*Judgment reversed.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I must respectfully dissent from the majority's opinion which, in my view, misinterprets the concept of status quo, misapplies the test used in determining whether work stoppage is due to a strike or lockout set forth in *Oriti* v. *Bd. of Review* (1983), 7 Ohio App. 3d 311, 7 OBR 394, 455 N.E. 2d 720, and unreasonably shifts the burden of offering to maintain the status quo squarely onto the shoulders of the employer.

The issue presented by this case is whether the work stoppage at the Shenango Company Dover Plant was caused by a lockout or by a strike, which would disqualify strikers from unemployment compensation benefits. The majority correctly sets forth the test used by the court of appeals in *Oriti, supra,* but then misapplies this test to the facts. The court in *Oriti* held that "* * * where employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout * * *." *Id.* at 314, 7 OBR at 398, 455 N.E. 2d at 724. The *Oriti* court relied on the Pennsylvania case of *Erie Forge & Steel Corp.* v. *Unemp. Comp. Bd. of Review* ("Vrotney Unemployment Compensation Case") (1960), 400 Pa. 440, 163 A. 2d 91, which included the following test:

"Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations * * *? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' * * *." *Erie Forge, supra,* at 444-445, 163 A. 2d at 93-94, quoted in *Oriti, supra,* at 313, 7 OBR at 396, 455 N.E. 2d at 723. *Oriti* and *Erie Forge* make it clear that employees must offer to extend a pre-existing contract for a reasonable time pending final settlement in order to maintain the status quo. The union in the present case failed under this analysis. Rather, the union made a "take it or leave it" offer of a new one-year contract including the cost-of-living allowance ("COLA") roll-ins. When the employer found this offer unreasonable both in length and in regard to COLA, the union removed its only offer from the table. The majority believes the rejection of the union's offer by the employer constituted a lockout. I disagree with the tortured application of the *Oriti* standard.

The majority strays from the reasoning behind *Oriti* in two respects. First, by demanding a contract extension with the COLA roll-ins the employees have not offered to continue working in accordance with the status quo. These roll-ins were negotiated terms to be added into the standard hourly wage of the employees. To continue these roll-ins during negotiations would not be true to the concept of status quo. See *Fairview School Dist. v. Unemp. Comp. Bd. of Review* (1982), 499 Pa. 539, 454 A. 2d 517. Maintaining status quo requires both parties to continue negotiations without demanding economic benefit in the interim.

*Fairview, supra.* Allowing roll-ins would be counterproductive to these tenuous labor negotiations. In a situation where the roll-ins are advantageous to the employees, and it is hard to imagine where this would not be the case, the allowance of roll-ins would be a disincentive to settlement. This is especially true when these roll-ins are the subject of ongoing negotiations.

As the Pennsylvania Commonwealth Court held in *Fairview School Dist., supra,* at 547, 454 A. 2d at 521, "[t]o require the School District to pay stepped up salary increases beyond the specified years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered."

The second deviation from the *Oriti* standard is the majority's conclusion that an offer of a new one-year contract, in and of itself, is an offer to maintain the status quo is ridiculous given the reality that the employer will be forced to give the same bargaining incentives and contractual arrangements for a fixed period (one year) during which he otherwise would be free to negotiate. *Oriti* and its predecessor *Erie Forge* assured that an offer of status quo pending settlement would be brought to the table in the interim by placing the burden of offering it on the union. The majority has betrayed the *Oriti* standard and has substituted a new one in its place. Henceforth, under the majority's holding, unions need only offer a one-year renewal of the current contract. If the current contract is unacceptable to the employer, the employer is nevertheless forced to accept this arbitrary one-year extension or be found to have locked out the employees without having offered or agreed to status quo in the interim. The majority completely ignores

the language in *Oriti* which requires that the offer by the union to continue work be for a reasonable time, pending settlement. The majority's holding will have the effect of turning three-year contracts into four-year contracts if the union finds this option more acceptable than what is being offered by the employer at the end of the current contract. One must also wonder whether this arbitrary one-year extension is itself renewable, thus binding the disadvantaged employer into the contract indefinitely.

In the case *sub judice*, the employees have not offered to continue under the pre-existing contract for a reasonable time pending settlement, but have offered a *new* one-year contract; therefore, they have not offered to continue under the status quo as suggested by *Oriti.* As the above analysis suggests, an offer of a new one-year contract is unreasonable in length and is not an offer to continue the status quo during negotiations. See *Bishop* v. *Unemp. Comp. Bd. of Review* (1985), 90 Pa. Commw. 553, 496 A. 2d 110; *Jehn* v. *Unemp. Comp. Bd. of Review* (1987), 110 Pa. Commw. 209, 532 A. 2d 57.

Accordingly, for the foregoing reasons I would affirm the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

WRIGHT, J., dissenting. I agree with the majority that the appropriate test to apply to the question of whether a work stoppage is a strike or a constructive lockout is the "status quo" test developed in Pennsylvania case law and adopted by the court of appeals in *Oriti* v. *Bd. of Review* (1983), 7 Ohio App. 3d 311, 7 OBR 394, 455 N.E. 2d 720. However, because I believe the majority has misapplied the status-quo test in this case, I must respectfully dissent.

A lockout is an exception to the general rule of R.C. 4141.29(D)(1)(a) that workers involved in a work stoppage do not qualify for unemployment compensation benefits. This is because the Unemployment Compensation Act " '* * * was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' *Salzl* v. *Gibson Greeting Cards* (1980), 61 Ohio St. 2d 35, 39 [15 O.O. 3d 49]." *Irvine* v. *Unemp. Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 17, 19 OBR 12, 14, 482 N.E. 2d 587, 589. Employees who have been locked out are unemployed through no fault of their own. If they are on strike, however, they do not qualify for unemployment compensation because their unemployment has resulted from their choice to deny the company their labor in order to obtain an advantage in negotiations with the company.

There was no lockout in this case. According to *Erie Forge & Steel Corp.* v. *Unemp. Comp. Bd. of Review* ("Vrotney Unemployment Compensation Case") (1960), 400 Pa. 440, 443-445, 163 A. 2d 91, 93-94, to prove that they have been locked out, employees must show that they proposed an extension of the pre-existing contract for a reasonable period of time, and that the employer refused this offer. *Id.* at 444-445, 163 A. 2d at 93-94. The majority concludes that the employees' offer to extend the 1982 contract for a year beyond the end of September 1985 was a proposal to extend the pre-existing contract for a reasonable period of time. Careful examination of the Pennsylvania case law makes it clear, however, that one year is not a reasonable period of time for such a proposed extension. More

importantly, the union's inclusion of quarterly cost-of-living increases in its proposal meant the union was offering a new one-year contract, not a mere extension of the 1982 agreement.

In its findings of fact, the Unemployment Compensation Board of Review found that the union's offer "* * * was to be a new one year agreement, not an extension of the expiring labor agreement. * * *" The court of appeals accepted this finding of fact.

The status-quo test requires that to be eligible for unemployment compensation, the employees must offer to continue the expiring contract for a reasonable time. *Erie Forge, supra,* at 444, 163 A. 2d at 93. *Oriti, supra,* at 314, 7 OBR at 398, 455 N.E. 2d at 724, refers to employees offering to extend the pre-existing contract "* * * pending final settlement of a labor dispute * * *." The status-quo offer found acceptable in *Erie Forge* was "* * * for an indefinite period of time with a five day cancellation clause by either party to permit additional time for negotiations. * * *" *Erie Forge, supra,* at 443, 163 A. 2d at 93. The *Erie Forge* court explained that the reason for encouraging the parties to maintain the status quo once a contract has expired is "* * * that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. * * *" *Id.* at 444, 163 A. 2d at 93. It would seem obvious that the effect of the one-year extension proposed by the union would not have been to facilitate negotiations but to postpone them. By proposing to extend the old contract for an extensive period of time, the union was in fact proposing a new contract, as the factfinder stated. In the past we have been careful not to disturb reasonable findings of administrative agencies. I am disappointed to see us discard this practice.

*Bishop* v. *Unemp. Comp. Bd. of Review* (1985), 90 Pa. Commw. 553, 496 A. 2d 110, involved a proposed one-year "extension" of a collective bargaining agreement. The Commonwealth Court of Pennsylvania denied unemployment compensation benefits for the period of the work stoppage in that case, agreeing with the Pennsylvania Unemployment Compensation Board of Review that "* * * one year is not a reasonable period under the circumstances because it would bind the Employer to the terms and conditions of the existing agreement, from which it was trying to escape, for a full year and the Union would then have little or no incentive to bargain for that period. * * *" *Id.* at 559, 496 A. 2d at 113. This, of course, is the fact situation before us. The union never offered to continue the status quo, and so the employee work stoppage cannot pass the status-quo test for a lockout.

The other reason the union fails the status-quo test is that its proposal to continue working under the terms of the 1982 agreement included continuation of quarterly cost-of-living increases, as the Board of Review found. (The union later insisted that it did not mean to propose continuation of the quarterly cost-of-living adjustment, but the board found that this was not effectively communicated to the company.) According to the majority, the union's proposal to extend the 1982 contract another year was a proposal to continue the status quo. This conclusion appears to ignore the fact that the dates for cost-of-living adjustments in the expired contract also expired on September 30, 1985. Salary increases — which is what cost-of-living adjustments amount to — must be negotiated as part of wage bargaining. The union certainly had a right to propose these increases, but a proposal that includes them cannot accurately be

characterized as an offer merely to extend the status quo.

The Supreme Court of Pennsylvania dealt with the effect of automatic pay increases on the *Erie Forge* status-quo test in *Fairview School Dist.* v. *Unemp. Comp. Bd. of Review* (1982), 499 Pa. 539, 454 A. 2d 517. In that case the school board and the teachers' union agreed on an extension. But the teachers began a work stoppage when the school board refused to pay step-ups in pay based on years of service. These increases, like the cost-of-living increases in the case before us, had been included in the expired contract. *Id.* at 542, 454 A. 2d at 518-519. The school board argued that the teachers were not entitled to unemployment compensation, because "* * * the stepped up salary increases for years of service contained in the salary schedules were bargained for by the District and the union only for the specific years covered by the expired contract and * * * increases beyond the years covered by the contract were neither contemplated nor bargained for. * * *" *Id.* at 544-545, 454 A. 2d at 520. The court agreed, holding "* * * that the School District's refusal to pay stepped up salaries did not constitute a disruption of the status quo; that the work stoppage in these cases resulted from a 'strike' rather than a 'lockout' * * *." *Id.* at 547, 454 A. 2d at 521.

We should apply the same reasoning to this case. When the 1982 contract expired, the union had not proposed maintaining the status quo. Instead, the union's offer of a one-year contract with four cost-of-living increases obviously constituted an offer to enter a new one-year contract. Just as clearly, management's rejection of this offer did not lead to a constructive lockout. The parties could not agree on the terms of a *new* contract, so the employees exercised their right to strike.

The majority emphasizes the fact, as the Board of Review found, that both the employer and the union attempted to insert some change in the terms of the pre-existing collective bargaining agreement. This is patently irrelevant to application of the *Erie Forge* status-quo test. In applying that test, a court first asks "* * * [h]ave the *employees* offered to continue working for a reasonable time under the pre-existing terms and conditions of employment * * * [?]" (Emphasis added.) *Erie Forge, supra,* at 444, 163 A. 2d at 93. The test does not require the employer to offer to maintain the status quo to prevent a lockout. If the employer refuses an offer to extend the status quo, then a resulting work stoppage is a lockout, but only if the *employees* have made an offer that qualifies as a genuine extension of the status quo. Since the board found that the union's proposal did not qualify as an extension of the pre-existing contract, company management was not obliged to accept this offer, and it was certainly not obliged to make one of its own.

The Supreme Court of Pennsylvania made it clear in *Philco Corp.* v. *Unemp. Comp. Bd. of Review* (1968), 430 Pa. 101, 104, 242 A. 2d 454, 456, that "* * * when * * * the work stoppage takes the *form* of a strike, the burden is upon the union to show that it made the initial 'peace' move by offering to continue the status quo. * * *" (Emphasis *sic*.) This allocation of the burden of proof is consistent with our holding in *Shannon* v. *Bureau of Unemp. Comp.* (1951), 155 Ohio St. 53, 44 O.O. 75, 97 N.E. 2d 425, paragraph one of the syllabus: "The burden of proof is upon the claimant to establish the right to unemployment benefits under the unemployment compensation law of Ohio." Therefore, by asking whether the employer made a bona fide proposal to extend the status

quo, the majority seemingly introduces an unnecessary and misleading element into its analysis.

R.C. 4141.28(O) provides that a court may reverse a Board of Review decision only "* * * [i]f the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence * * *." In deciding whether the decision was against the weight of the evidence, a court must consider the evidence that was before the board. *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 45, 23 O.O. 3d 57, 60, 430 N.E. 2d 468, 471. Here the evidence that the union's offer was for one year was undisputed. In addition, the union president himself testified that he never made it clear that the union was willing to modify its one-year offer to delete the quarterly cost of living increases it had proposed:

"Q. Well, let's — let's go through this again. What I want to find out, when you offered the one year extension, was that with four cost-of-living increases over the period of that one year per — that one year?

"A. To the best of my knowledge, on the 20th we offered it that way, yes.

"Q. Okay. Did you modify this offer at any time after that before the expiration of the old contract?

"A. On — when we discussed the contract extension on another occasion — I'm not sure which date it was — we told them we would give them [a] one year extension for help in the future, and at that time it was my feeling we were not talking about any cost-of-living, 'cause we told 'em [*sic*] at that time we could not talk 30 and 20 percent reduction.

"Q. When you say it was your feeling that you weren't talking about cost of living, did you ever make it clear to the Company that the Union was willing to extend the contract for a one year period without any further cost-of-living increases?

"A. *I don't believe we ever got far enough to discuss that.*" (Emphasis added.)

The trial court had no reason to disturb the board's decision here, supported as it was by evidence that the union had not proposed an extension of the contract that met the status-quo test. As we stated in *Irvine, supra,* at 18, 19 OBR at 15, 482 N.E. 2d at 590: "* * * The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. * * *" Thus, I would affirm the court of appeals and reinstate the board's denial of unemployment compensation benefits.

MOYER, C.J., concurs in the foregoing dissenting opinion.