OPINION
Joan Albaugh, Linda Kostelnik, Lori Mitchell, Susie Clark, Melissa Essex, Mary Hayes, Deborah Wardeska, Robert King, Aspasia Kirkpatrick, Jennifer Moser, Carol Likes, Shirley Thomas, and Douglas Waller appeal a judgment of the Court of Common Pleas of Guernsey County, Ohio, which affirmed the decision of the Unemployment Compensation Review Commission. The Review Commission had determined the thirteen claimants listed above were not entitled to unemployment compensation benefits because their employment was due to a labor dispute other than a lockout. Appellants assign a single error to the trial court:
 ASSIGNMENT OF ERROR THE COMMON PLEAS COURT ERRED BY NOT CORRECTING THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW BOARD WHICH DECISION WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Claimants are employees of the Guernsey County District Library working as clerks, custodians, or managers. The Ohio Association of Public School Employees, Local 26, is the exclusive bargaining representative for the appellants. The Union and the Library were parties to a collective bargaining agreement effective November 1, 1995, through October 31, 1998. In September of 1998, the parties began to negotiate for a successor agreement. The Union's field representative, Steven Kubic, was the lead negotiator on behalf of the Union.
The parties were unable to reach a new collective bargaining agreement before the expiration of the 1995 agreement. For this reason, the parties agreed to continue the terms and conditions of the expired collective bargaining agreement until they could reach a new one. The parties continued under these conditions for approximately five months, with differences remaining on salary, insurance, and work breaks. Faced with the impasse, on April 9, 1999, the Library notified the Union it would implement its final and best offer on April 18, 1999. On April 12, 1999, the Union notified the Library this was not acceptable and that the employees would strike on April 24, 1999. On April 24, 1999, the employees of the library did go on strike. The parties did not agree to a new collective bargaining agreement until approximately the first week of June 1999.
After the employees ratified the collective bargaining agreement, they applied for unemployment for the six weeks they were on strike. The Administrator found the provisions dealing with breaks, insurance, and salaries were substantially the same in the new collective bargaining agreement as in the library's final and best offer. The Administrator determined employees were not entitled to unemployment compensation, and the court of common pleas affirmed its decision.
In Bays v. Shenango (1990) 53 Ohio St.3d 132, the Ohio Supreme Court discussed when a person may be eligible for unemployment compensation following a strike. The court said:
 Appellants contend that because their unemployment was due to a lockout by Shenango, they were qualified to receive unemployment compensation benefits pursuant to R.C. 4141.29(D)(1)(a). Shenango and the Ohio Bureau of Employment Services reject this contention and argue that appellants' unemployment was due to a labor dispute other than a lockout, or, in other words, a strike.
 A "lockout" has been defined by this court as "* * * a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms.
 "Such a definition does not circumscribe all the manifestations of an alleged lockout situation. It does not, of course, confine a lockout to an actual physical closing of the place of employment.
 This court in Leach v. Republic Steel Corp. (1964), 176 Ohio St. 221, 223-224, 27 O.O.2d 122, 123, 199 N.E.2d 3, 5, distinguished the term "strike" from "labor dispute":
 "As generally understood, a `strike' is a cessation of work by employees in an effort to obtain more desirable terms with respect to wages, working conditions, etc., whereas a `labor dispute' is of a broader scope and includes a controversy between employer and employees concerning wages, working conditions or terms of employment."
 In its discussion of when a strike exists, this court 67 N.E.2d 714, relied on a pertinent Colorado Supreme Court decision, Sandoval v. Indus. Comm. (1942), 110 Colo. 108, 130 P.2d 930. When determining whether employees had engaged in a strike, the Sandoval court looked at which party, the union or the employer, sought to change the status quo. The court determined that the employer had maintained the status quo because it had made employment available to the employees under the terms of the then expired contract. Because the employees refused to work unless there was a change in the status quo, this "constituted a demand for a modification of working conditions and rates of pay and * * * their refusal to work until there was a compliance with such demand, did constitute a strike." Sandoval, supra, at 122, 130 P.2d at 937.
Bays, at 134-135, citations deleted.
Our standard of reviewing the Unemployment Board of Reviews Commission decision is to determine whether it is unlawful, unreasonable, or against the manifest weight of the evidence, Tzangas, Plakas, Mannos v. OhioBureau of Employment Services (1995), 73 Ohio St.3d 694. In Bays, the Ohio Supreme Court cited Sandoval v. Industrial Commission (1942),110 Colo. 108. The Sandoval court held when determining whether employees has engaged in a strike, a court should look at which party sought to change the status quo. The Ohio Supreme Court found the status quo test requires that the action of both the employer and the union be scrutinized in order to ascertain whether the parties sought to maintain the status quo or which side, union or management, first refused to continue operations under the status quo after the contract had expired, but while negotiations were continuing. Bays at 135, citations deleted. In Bays, the employer offered to extend the pre-existing contract for 30 days, except for the last "roll-in" cost-of living increase, which was a part of the prior existing contract and which was to be paid effective the last day of the prior contract. The Supreme Court found this was a deviation from the status quo, even though all other aspects of the contract were to remain the same.
The Bays court held that an employer deviates from the status quo if he refuses to allow work to continue for a reasonable time under the exiting terms and conditions of employment while the negotiations continue, Id.
Appellees respond that the Board of Review and the Common Pleas Court properly applied the law stated in Zanesville Rapid Transit, Inc. v.Bailey (1958), 168 Ohio St. 351. In Zanesville, the Ohio Supreme Court found changes in the terms of employment during the negotiations might be such that under all the circumstances, the employees would be expected reasonably to accept the term rather than to strike. To constitute a lockout by the employer, such that the employee would be entitled to unemployment compensation, the conditions of further employment announced by the employer must be such that the employees could not reasonably be expected to accept them, and they must manifest a purpose on the part of the employer to coerce his employees into accepting the terms of the offer. Zanesville, page 354, 355. Although the Court of Common Pleas did not cite Zanesville, it found "the evidence in the record supports the finding that the employer (Library) did not impose work conditions that the employees could not reasonably be expected to accept. The court found the Library's best and final offer was not so unreasonable as to justify the claimant's work stoppage. Opinion of July 24, 2000 at page 2.
In the case at bar, the Library used the phrase "final and best offer" and declared the parties to be at an impasse. We find the magic words, "final and best offer" do not automatically invoke the Zanesville test; rather, the facts and circumstances must control.
Although the Bays court cited Zanesville, it did not overrule it, nor did it explain when to apply Bays and when to apply Zanesville. We must review both cases to determine how they can be construed together. At the outset, we find they both present a reasonableness standard. Bays deals with situations where the status quo has been changed, and directs us to determine whether the party who changed the status quo acted reasonably. If the party who changed the status quo is the employer, the Bays test is employed to review the employer's actions. If the court finds the employer acted reasonably in offering its best and final offer, then the analysis shifts to an examination of whether the employees' response to the offer was reasonable, which is the Zanesville analysis. In other words, the Supreme Court has provided us with a framework which will analyze both parties' actions in turn. It is only logical to place the burden of proof on the actor in each instance, to show its actions were reasonable.
The first step must be to determine which party altered the status quo, and the facts support the Hearing Officer's finding that the employer was the party who did so. Pursuant to Bays, the parties may change the status quo only after allowing it to exist for a "reasonable time". In its decision, the Review Commission found that five months was a reasonable time, and thus the employer was entitled to determine the negotiations were at an impasse, and implement its best and final offer. We do not agree.
The reasonableness of any business decision depends on the special facts and circumstances of the case. Here, the record does not contain any evidence whatsoever to explain the circumstances which led the employer to change the status quo and make what is, in effect, a "take it or leave it" offer. The Review Commission cites only the passage of time, and we find this is insufficient. The employer must show how the passage of time has impaired its business, or will adversely affect its immediate future. For example, an employer could be faced with an inability to deliver on its contracts, or might be impaired in its ability to secure new contracts because of the uncertainty of its labor force. The mere passage of time, without more, does not demonstrate why the status quo should be disrupted.
Because the record does not contain any evidence to support the employer's claim it had waited a reasonable time, we conclude the finding of the Hearing Officer was against the manifest weight of the evidence.
We find the trial court and the Board applied the wrong test in usingZanesville. Instead, the Bays status quo test applies here.
We find the Library, not the union, changed the status quo in implementing its final offer. Accordingly, we conclude this was a "lockout" as defined in Ohio law, and the Guernsey County, Case No. 00CA024 appellants' claims should have been allowed.
The assignment of error is sustained.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is reversed and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to appellee Guernsey County District Library.
Gwin, P.J. Hoffman, J., and Boggins, J., concur.