JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Ohio Bureau of Employment Services (OBES), appeals the decision of the Cuyahoga County Court of Common Pleas, Civil Division, which reversed the Hearing Officer's and Review Commission's denial of unemployment compensation benefits to the appellees, Fred A. Aliff and approximately 43 other former employees of ANR/Advance Transportation Company ("ANR").
 {¶ 2} ANR had truck terminals in Akron, Cincinnati, Cleveland, Columbus, Dayton and Toledo, Ohio. The employees of the Ohio terminals were members of various local unions of the International Brotherhood of Teamsters. The Teamsters negotiated on behalf of the various local unions through the National Master Freight Agreement with the covered employers.
 {¶ 3} The existing labor agreement between ANR and the Teamsters expired on March 31, 1998. In anticipation of the expiration of the labor agreement and because of its precarious financial situation, ANR sought to begin renegotiation discussions in the summer of 1997; however, despite attempts at bargaining, the parties did not begin to actively negotiate until August of 1998.
 {¶ 4} The parties continued to negotiate until November of 1998 in an attempt to reach an amicable agreement. ANR made a "final contract offer," dated November 16, 1998, which was rejected by the Teamsters. ANR's "final contract offer" was a five-year agreement extending through March 31, 2003, which proposed no basic wage changes, but included an annual bonus payment. The ANR offer included an increase in the employee's deductible amount from $100 to $200 for healthcare benefits. Additionally, the ANR offer reduced the percentage of active employees guaranteed 40 hours of work per week from 90 percent to 75 percent. Moreover, overtime pay would only be earned after 40 hours of work in a week rather than after eight hours in a work day, as previously calculated. Last, sick leave, vacation calculation and the use of part-time employees were incorporated into the final offer by ANR.[1]
 {¶ 5} On December 2, 1998, the union's negotiating committee instructed all locals to hold meetings on December 5-6, 1998 to review the employer's final offer and take a strike vote. ANR notified the Teamsters of its intent to implement the final offer on December 7, 1998. At 12:01 a.m. on December 8, 1998, union officials authorized a strike against ANR. As a result of the work stoppage by the union, all management and non-union employees at each of the premises became unemployed.
 {¶ 6} Testimony reveals that on December 18, 1998, the union notified the locals that since there was no evidence that ANR planned to resume operations, the picketing should cease. Last, the record indicates that on December 21, 1998, employees offered to return to work, but were told by management that no work was available. On December 22, 1998, ANR issued a memorandum to its terminal managers instructing them that anyone who attempted to return to work should be advised that ANR had not been notified that the strike was over and that there was no work available because of the strike.
 {¶ 7} As a result of operations being ceased by ANR, the appellees applied for unemployment compensation. Thereafter, the OBES issued a decision finding that they were not entitled to unemployment compensation benefits because their unemployment was due to a "labor dispute other than a lockout" beginning December 8, 1998. The appellees appealed the OBES determination to the Cuyahoga County Court of Common Pleas, which thereafter reversed the decision of the OBES. It is from this determination which OBES now appeals.
 {¶ 8} For the following reasons, we find the appeal has merit.
 {¶ 9} The appellant, OBES, presents two assignments of error for this court's review. The first assignment of error states:
 {¶ 10} "I. The Common Pleas Court erred in reversing the Unemployment Compensation Review Commission's finding that claimants were not entitled to unemployment compensation as there is competent, credible evidence in the record that claimants were unemployed due to a labor dispute other than a lockout."
 {¶ 11} R.C. 4141.28(O)(1) states that any interested party may appeal from a decision of the Review Commission to the court of common pleas, and the court of common pleas may reverse or modify such decision only if it finds the decision was unlawful, unreasonable or against themanifest weight of the evidence. (Emphasis added.) The same standard applies to this court's review. Tzangas, Plakas Mannos v. Ohio Bur.of Emp. Serv. (1995), 73 Ohio St.3d 694, 696. In so reviewing, however, the Review Commission's role as factfinder remains intact, and the fact that reasonable minds may reach different conclusions is not a basis forreversing the Review Commission's decision. 73 Ohio St.3d at 697
(Emphasis added.) An appellate court may not make factual findings or assess the credibility of witnesses and may determine only whether the evidence supports the Review Commission's decision.73 Ohio St.3d at 696-697.
 {¶ 12} R.C. 4141.29(D)(1)(a) provides that no individual is entitled to unemployment compensation benefits for any week during which their unemployment is due to a labor dispute other than a lockout. Therefore, the sole issue to be decided by this court is whether the appellees' unemployment was due to a lockout or a labor dispute other than a lockout. As such, in order to determine whether the plaintiffs are entitled to benefits, we must determine whether the labor dispute was or was not a lockout within the meaning of the Ohio unemployment compensation law. See Aliff v. Ohio Dept. of Job and Family Services
(Sept. 25, 2001), Franklin Cty. App. No. 01AP-18.
 {¶ 13} The Ohio Supreme Court in Zanesville Rapid Transit, Inc.v. Bailey (1958), 168 Ohio St. 351, 354, defined a "lockout" as a "cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." A lockout is not confined to an actual physical plant closing; employees may be subjected to a constructive lockout as well. Id. A constructive lockout occurs when "the conditions of further employment announced by the employer are such that the employees could not reasonably be expected to accept them and the terms manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms." Id. at 355.
 {¶ 14} While in Zanesville the Ohio Supreme Court focused on whether the employer imposed unreasonable conditions on employees which left them no alternative but to cease working, in Bays v. Shenango Co.
(1990), 53 Ohio St.3d 132, they adopted the "status quo" test to determine whether a labor dispute is considered a strike or a lockout. Quoting Erie Forge Steel Corp. v. Unemploy. Comp. Bd. of Review
(1960), 400 Pa. 440, 443-445, the Ohio Supreme Court stated:
 {¶ 15} "* * * The sole test under * * * the Unemployment Compensation Law * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending furthernegotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a `lockout' and the disqualification of unemployment compensation benefits in the case of a `stoppage of work because of a labor dispute' does not apply." Bays, supra, 53 Ohio St.3d at 134-135.
 {¶ 16} The "status quo" test therefore requires a determination of "which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, butwhile negotiations were continuing." 53 Ohio St.3d at 135, quoting PhilcoCorp v. Unemp. Comp. Bd. of Review (1968), 430 Pa. 101, 103, 242 A.2d 454,455.
 {¶ 17} The "status quo" test set forth in Bays, supra, compels application of the "status quo" test only where negotiations between the parties are ongoing at the time the employer implements its final offer. The test set forth in Zanesville should be applied to determine whether a work stoppage is due to a lockout in instances where negotiations have ceased. Johnson v. Ohio Bur. of Emp. Serv. (1993), 82 Ohio App.3d 293. If the relationship between the parties has broken down to the point where meaningful negotiations have ceased, then under Bays, the employer does not deviate from the status quo when it implements its final offer. Id. at 298.
 {¶ 18} In the case at hand, the hearing officer determined that negotiations had ceased before ANR unilaterally implemented its final offer on December 7, 1998. The hearing officer found that "contract negotiations were not continuing at the time the work stoppage began." Testimony established that on November 16, 1998, ANR notified the union that it had made its final offer and the offer would be unilaterally implemented on December 7, 1998. We note, "[w]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." Id.
 {¶ 19} R.C. 4141.29 provides the circumstances under which an individual may serve a waiting period or be paid unemployment compensation and states in part:
 {¶ 20} "(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
 {¶ 21} "(1) For any week with respect to which the administrator finds that:
 {¶ 22} "(a) His unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which he is or was last employed; and for so long as his unemployment is due to such labor dispute * * *."
 {¶ 23} As stated, the parties met on numerous occasions between August 1998 and November 1998 to negotiate a new contract. On November 16, 1998, ANR presented its "final offer" but did not indicate that there existed a firm implementation date of the "final offer." The evidence reflects that the union asked ANR for another bargaining session, but on December 1, 1998, ANR's president rejected the union's request. Thereafter, on December 7, 1998, ANR unilaterally implemented its final offer despite the unions's clear attempt to continue negotiations.
 {¶ 24} Therefore, under the instant facts and in accordance withBays, supra, we cannot conclude that no impasse existed when ANR implemented its "final offer" on December 7, 1998. As such, ANR's action can only be construed as a constructive lockout. Accordingly, R.C. 4141.29(D)(1)(a) states a lockout is not a form of "labor dispute" that disqualifies an employee affected by it from receiving unemployment compensation benefits. "The pendency of the constructive lockout rendered the subsequent strike immaterial to their right to benefits, even though the strike commenced the following day, December 8, 1998." Aliff v. OhioBureau of Employment Services, et al. (Oct. 5, 2001), Montgomery App. No. 18647.
 {¶ 25} As noted, a court of common pleas may reverse or modify such decision only if it finds the decision was unlawful, unreasonable oragainst the manifest weight of the evidence. (Emphasis added.) The same standard applies to this court's review. Tzangas, Plakas Mannos v.Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696.
 {¶ 26} In light of the abundant evidence presented at the administrative level, we can only conclude that the determination of the Review Commission was against the manifest weight of the evidence since the union members were constructively locked out due to the unilateral implementation of ANR's "final offer." Clearly, the evidence indicates that negotiations were continuing when ANR abruptly informed the union that the "final offer" would be unilaterally implemented. Therefore, we cannot endorse the determination of the review commission, and the judgment of the lower court is hereby affirmed.
 {¶ 27} The appellant's second assignment of error states:
 {¶ 28} "II. The Common Pleas Court erred in making a finding as to the duration of the labor dispute."
 {¶ 29} Upon review of the record, we find that the appellees did not appeal the March 3, 1999 order to the Review Commission wherein it was determined that the labor dispute ended on February 8, 1999. According to R.C. 4141.28(D)(1)(c), a hearing officer's decision is final unless an application for appeal is filed with the Review Commission within 21 days. The appellees have conceded that an appeal of the March 3, 1999 decision was never filed with the Review Commission. Since the appellees failed to exhaust their administrative remedies with regard to this issue, the lower court was without jurisdiction to find that the labor dispute ended on December 18, 1998. See Noernberg v. Brook Park
(1980), 63 Ohio St.2d 26. Therefore, the original determination that February 8, 1999 was the date on which the labor dispute ended is hereby reinstituted.
Judgment affirmed in part and reversed in part.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., concur.
[1] There is no dispute that ANR was having financial difficulties, as evidenced by ANR's bankruptcy filing and its cessation of operations.