OPINION JUDGMENT ENTRY
{¶ 1} This is an administrative appeal by Plaintiff-Appellant The M. Conley Company, from an October 14, 2003, ruling by the Stark County Common Pleas Court affirming the Ohio Unemployment Compensation Review Commission's decision finding that when permanent replacement workers were hired on July 19, 2002, the work stoppage turned into a lockout, entitling the workers to receive unemployment compensation benefits.
{¶ 2} Defendant-Appellee is the Ohio Department of Job and Family Services.
 STATEMENT OF THE FACTS AND CASE
{¶ 3} The claimants in this matter are members of Local 92 and were employed at The M. Conley Company (Conley). Approximately 39-44 of Conley's 100 employees were members of Local 92. (T. at 10-11, 81).
{¶ 4} Local 92's collective bargaining agreement (CBA) with Conley was set to expire on June 30, 2002, therefore they began negotiations in early June, 2002. (T. at 15). The main issues in said negotiations were seventeen (17) driving unit positions, the "health and welfare" plan and the pension plan. (T. at 17). A new CBA was not reached before the expiration of the old CBA, however the parties continued to hold negotiation sessions after the expiration of such. (T. at 23, 96-97).
{¶ 5} On June 30, 2002, Conley made two proposals to Local 92 on which it could vote, the first terminating the driving division, the second not terminating such. (T. at 23). The two proposals also contained wage differences. Id.
{¶ 6} Local 92, by a substantial majority, voted to not accept either proposal. (T. at 22). This vote also contained a vote to conduct a work stoppage. (T. at 26-27). This work stoppage began on July 1, 2002, with the picket lines still in existence as of the date of oral argument.
{¶ 7} Conley continued operating with its remaining non-union employees and workers hired through a temporary agency. (T. at 28-29). During the third week of the work stoppage, Conley began to hire permanent replacement workers. (T. at 24, 44, 83, 101). Such hiring was complete by July 19, 2002. Id.
{¶ 8} Thereafter, the Local 92 employees applied for unemployment compensation benefits in connection with the work stoppage. The matter was referred to a hearing officer of the Ohio Department of Job Family Services.
{¶ 9} On August 27, 2002, this matter came on for hearing before the Ohio Department of Job Family Services Hearing Officer.
{¶ 10} On September 6, 2002, the Hearing Officer issued his Decision wherein he found that all of the subject striking claimants became qualified for unemployment compensation benefits on July 19, 2002, when Appellant Conley hired permanent replacement workers.
{¶ 11} Appellant appealed such Decision to the Commission, which upheld such Decision, determining that the application for appeal should be disallowed.
{¶ 12} Appellant appealed this decision to the Stark County Common Pleas Court.
{¶ 13} On October 14, 2003, the Stark County Common Pleas Court issued its Judgment Entry affirming the Commission's Decision.
{¶ 14} It is from this decision that Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR
{¶ 15} "I. The common pleas court erred in affirming the unemployment compensation review commission's finding that appellant's hiring of permanent replacement workers "converted" the subject strike from a labor dispute to a lockout.
{¶ 16} "II. The common pleas court erred in affirming the unemployment compensation review commission's decision, which decision effectuated an unlawful and unconstitutional preemption of federal law, the nlra; and which decision otherwise served to deny appellant its rights under the nlra.
{¶ 17} "III. The common pleas court erred in affirming the unemployment compensation review commission's decision, which decision effectuated a violation of the public policy of the state of ohio to preserve neutrality in labor disputes by not forcing an employer to finance, via payment of unemployment benefits to strikers, a strike against it."
 I., II., III.
{¶ 18} We will address Appellant's assignments of error contemporaneously as each challenges the trial court's decision affirming the finding of the Unemployment Compensation Review Commission.
{¶ 19} In each of its assignments of error, Appellant claims the trial court erred in affirming the Review Commission's finding that claimants became entitled to unemployment compensation benefits when Appellant hired permanent replacement workers. We disagree.
{¶ 20} R.C. 4141.282(H), which provides for judicial review of a determination of unemployment compensation benefits, states in pertinent part:
{¶ 21} "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."
{¶ 22} Therefore, a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos v.Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 697. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." Id. In so reviewing, however, the Review Commission's role as factfinder remains intact, and the fact that reasonable minds may reach different conclusions is not a basis for reversing the Review Commission's decision. Id. at 697,653 N.E.2d 1207.
{¶ 23} The purpose of the Ohio Unemployment Compensation Act is "to ameliorate the burdens on employees suffering from involuntary unemployment and to provide them with short-term financial relief." Abate v. Wheeling Pittsburgh Steel Corp.
(1998), 126 Ohio App.3d 742, 748 (citing Baker v. PowhatanMining Co. (1946), 146 Ohio St. 600). Both parties carry a burden of proof as to whether claimants are entitled to unemployment compensation: the claimant has the initial burden of proving a right to compensation, and the employer must prove any claimed exception to that right. Id.
{¶ 24} The main issue to be decided by this court involves a question of law, specifically, whether or not appellees' unemployment was due to a lockout or a labor dispute other than a lockout. The evidence in the instant case reveals that appellees became unemployed on July 1, 2002, when they began picketing The M. Conley Company and did not report for work.
{¶ 25} R.C. 4141.29 provides the requirements for eligibility and qualification for benefits and further lists the following exceptions:
{¶ 26} "(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
{¶ 27} "(1) For any week with respect to which the director finds that:
{¶ 28} "(a) The individual's unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which the individual is or was last employed; and for so long as the individual's unemployment is due to such labor dispute. No individual shall be disqualified under this provision if either of the following applies * * *."
{¶ 29} Thus, in order to determine whether appellants are entitled to benefits, it must be determined whether the labor dispute was or was not a lockout within the meaning of the Ohio unemployment compensation law.
{¶ 30} In Bays v. Shenango Co. (1990), 53 Ohio St.3d 132,559 N.E.2d 740, the Ohipo Supreme Court adopted the so-called "status quo" test, to determine whether a labor dispute is considered a strike or a lockout. Quoting the test developed in Erie Forge Steel Corp. v. Unemploy. Comp. Bd. of Review (1960),400 Pa. 440, 443-445, 163 A.2d 91, 93-94, the Ohio Supreme Court stated:
{¶ 31} "* * * [T]he sole test under * * * the Unemployment Compensation Law * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification of unemployment compensation benefits in the case of a `stoppage of work because of a labor dispute' does not apply." [Bays, supra,
ar 134-135.]
{¶ 32} The "status quo" test therefore requires a determination of "which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing."Id. at 135, 163 A.2d 91, quoting Philco Corp v. Unemp. Comp.Bd. of Review (1968), 430 Pa. 101, 103, 242 A.2d 454, 455.
{¶ 33} The Ohio Supreme Court has approved the definition of a lockout as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." Zanesville Rapid Transit, Inc.v. Bailey (1958), 168 Ohio St. 351, 354, 155 N.E.2d 202, 205;
{¶ 34} Appellant's action in hiring permanent replacement workers altered the "status quo" and thereby constituted a lockout. Per R.C. § 4141.29(D) (1(a), a lockout is not a form of "labor dispute" that disqualifies an employee affected by it from receiving unemployment compensation benefits. The Local 92 employees of The M. Conley Company affected by the lockout are entitled to receive unemployment compensation benefits for the period commencing July 19, 2002.
{¶ 35} Appellant's I, II and III assignments of error are overruled.
{¶ 36} The decision of the Stark County Court of Common Pleas is affirmed.
Boggins, J., Gwin, P.J. and Hoffman, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to be assessed to Appellant.