OPINION
{¶ 1} Appellees-appellants Shield Alloy Corporation, et al. appeal the March 11, 2005, Opinion entered by the Guernsey County Court of Common Pleas, which reversed and remanded the decision of the Unemployment Compensation Review Commission finding appellants-appellees Rodney W. Anderson, et al. were not entitled to unemployment compensation benefits.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts of this case are largely undisputed. Shield Alloy entered into a collective bargaining agreement ("CBA") with the United Steel Workers of America, Local Union No. 4836-02 ("Union") of which appellees herein are members. The CBA went into effect on June 11, 1998, and expired on June 6, 2003. Beginning on April 4, 2003, through June 13, 2003, the parties conducted fifteen bargaining sessions in an attempt to reach a new agreement. In early June, 2003, the Union offered to continue working under the expiring CBA indefinitely. The parties mutually agreed to an extension of the CBA through June 14, 2003. The Union made a concessionary offer for a new agreement on or about June 6, 2003. Shield Alloy countered with an offer for a new agreement which included further concessions than those the Union had offered. The Union's offer included a three percent wage decrease compared to the expiring CBA while Shield Alloy's countered with a twelve to thirteen percent wage decrease.
 {¶ 3} By a substantial majority, the members of the Union voted to reject Shield Alloy's "final offer" on June 13, 2003. Shield Alloy interpreted the contract rejection by the Union as an impasse in negotiations, and on June 15, 2003, implemented its "final offer". The Union worked under the "final offer" from June 15, 2003, through December 8, 2003. During this time, the Union filed a charge with the National Labor Relations Board ("NLRB"), alleging the parties had not reached an impasse in negotiations. The NLRB dismissed the charges against Shield Alloy on November 26, 2003. After the NLRB's dismissal, the parties agreed to a December 8, 2003 negotiation session. The parties did not engage in any negotiation sessions between June 13, 2003, and December 8, 2003. The Union advised Shield Alloy if the parties did not revert back to the expired CBA with a retroactive payment in the difference between the implemented "final offer" and the expired CBA, a work stoppage would be recommended to the members. Shield Alloy would not agree to the terms. The members of the Union, by a substantial majority, voted to reject Shield Alloy's "final offer", and commence a work stoppage on December 8, 2003.
 {¶ 4} Thereafter, appellees applied for unemployment compensation benefits with the Ohio Bureau of Employment Services. The Unemployment Compensation Review Commission ("Review Commission") found appellees had become unemployed due to a labor dispute other than a lockout; therefore, were not entitled to unemployment compensation benefits. Appellees appealed to the Guernsey County Court of Common Pleas, which reversed the decision of the Review Commission, finding the unemployment of the Union members was due to a lockout, and, the members were entitled to unemployment compensation benefits. The trial court memorialized its decision via Opinion filed March 11, 2005.
 {¶ 5} It is from this decision Shield Alloy appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR OF SHIELD ALLOY CORPORATION {¶ 6} "I. THE TRIAL COURT'S OPINION OF MARCH 11, 2005 FAILED TO APPLY THE APPROPRIATE STANDARD OF REVIEW UNDER REVISED CODE SECTION 4141.28(O) BECAUSE THE TRIAL COURT IMPROPERLY SUBSTITUTED ITS JUDGMENT FOR THE BOARD OF REVIEW'S JUDGMENT AND REVERSED THE BOARD OF REVIEW'S DECISION BASED SIMPLY ON A DIFFERENT INTERPRETATION OF THE EVIDENCE.
 {¶ 7} "II. THE TRIAL COURT'S OPINION OF MARCH 11, 2005 FAILED TO APPLY THE APPROPRIATE STANDARD OF REVIEW UNDER REVISED CODE SECTION 4141.28(O) BECAUSE THE TRIAL COURT IMPROPERLY MADE A FACTUAL DETERMINATION THAT IS WITHIN THE SOLE JURISDICTION OF THE BOARD OF REVIEW."
 ASSIGNMENTS OF ERROR OF OHIO DEPARTMENT OF JOB AND FAMILY SERVICES {¶ 8} The Ohio Department of Job and Family Services ("ODJFS") also appeals the same Opinion, raising as error:
 {¶ 9} "THE COMMON PLEAS COURT ERRED IN FINDING THAT THE DECISION OF THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION WAS UNLAWFUL, UNREASONABLE AND AGAINST THE MAINFEST WEIGHT OF THE EVIDENCE, WHEN THE EVIDENCE SUPPORTS THE CONCLUSION THAT THE CLAIMANTS BECAME UNEMPLOYED DUE TO A LACK OF WORK."
 Shield Alloys I, II and ODJFS I {¶ 10} Because both of Shield Alloy's assignments of error and ODJFS's assignment of error require identical analysis, we shall address said assignments of error together. In its first assignment of error, Shield Alloy maintains the trial court failed to apply the appropriate standard of review as it improperly substituted its judgment for that of the Review Commission. In its second assignment of error, Shield Alloy submits the trial court improperly made a factual determination which was within the sole jurisdiction of the Review Commission. In its sole assignment of error, ODJFS asserts the trial court erred in finding the decision of the Board of Review was unlawful, unreasonable, and against the manifest weight of the evidence.
 {¶ 11} R.C. 4141.28(O)(1) states any interested party may appeal from a decision of the Review Commission to the court of common pleas, and the court of common pleas may reverse or modify such decision only if it finds the decision was unlawful, unreasonable or against the manifest weight of the evidence. (Emphasis added.) The same standard applies to this Court's review. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.,73 Ohio St.3d 694, 696, 1995-Ohio-206. "In so reviewing, however, the Review Commission's role as fact finder remains intact, and the fact that reasonable minds may reach different conclusions is not a basis for reversing the Review Commission's decision." Id. at 697. (Emphasis added.) An appellate court may not make factual findings or assess the credibility of witnesses and may determine only whether the evidence supports the Review Commission's decision. Id. at 696-697.
 {¶ 12} R.C. 4141.29(D)(1)(a) provides no individual is entitled to unemployment compensation benefits for any week during which their unemployment is due to a labor dispute other than a lockout. Therefore, the sole issue to be decided by this court is whether the appellees' unemployment was due to a lockout or a labor dispute other than a lockout. As such, in order to determine whether the plaintiffs are entitled to benefits, we must determine whether the labor dispute was or was not a lockout within the meaning of the Ohio unemployment compensation law.
 {¶ 13} In Zanesville Rapid Transit, Inc. v. Bailey (1958),168 Ohio St. 351, the Ohio Supreme Court defined a "lockout" as a "cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." Id. at 354. A lockout is not confined to an actual physical plant closing; employees may be subjected to a constructive lockout as well. Id. A constructive lockout occurs when "the conditions of further employment announced by the employer are such that the employees could not reasonably be expected to accept them and the terms manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms." Id. at 355.
 {¶ 14} In Zanesville, supra, the Supreme Court focused on whether the employer imposed unreasonable conditions on its employees which left the employees no alternative but to cease working. However, in Bays v. Shenango Co. (1990),53 Ohio St.3d 132, the Court adopted the "status quo" test to determine whether a labor dispute is considered a strike or a lockout. QuotingErie Forge Steel Corp. v. Unemploy. Comp. Bd. of Review
(1960), 400 Pa. 440, 443-445, 163 A.2d 91, the Ohio Supreme Court stated:
 {¶ 15} "* * * The sole test under * * * the Unemployment Compensation Law * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a `lockout' and the disqualification of unemployment compensation benefits in the case of a `stoppage of work because of a labor dispute' does not apply." Id. at 134-135. (Emphasis in original).
 {¶ 16} The "status quo" test, therefore, requires a determination of "which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." Id. at 135, quoting Philco Corp v. Unemp. Comp. Bd. of Review
(1968), 430 Pa. 101, 103, 242 A.2d 454, 455 (Emphasis added).
 {¶ 17} Some courts of appeal have determined the Bays,
supra, "status quo" test applies only where negotiations between the parties are ongoing at the time the employer implements its final offer, while the Zanesville, supra, test applies to determine whether a work stoppage is due to a lockout in instances where negotiations have ceased. See: Aliff v.Unemployment Comp. Review Com'n, (March 13, 2003), Cuyahoga App. No. 80767, 2003-Ohio-1155; Johnson v. Ohio Bur. of Emp. Serv.
(1993), 82 Ohio App.3d 293. If the relationship between the parties has broken down to the point where meaningful negotiations have ceased, then under Bays, supra, the employer does not deviate from the status quo when it implements its final offer. Johnson, supra at 298.
 {¶ 18} In Albaugh v. Unemployment Compensation ReviewComm'n (May 11, 2001), Guernsey App. No. 00CA024, unreported, this Court determined Bays, supra, and Zanesville, supra, must be interpreted together:
 {¶ 19} "Although the Bays court cited Zanesville, it did not overrule it, nor did it explain when to apply Bays and when to apply Zanesville. We must review both cases to determine how they can be construed together. At the outset, we find they both present a reasonableness standard. Bays deals with situations where the status quo has been changed, and directs us to determine whether the party who changed the status quo acted reasonably. If the party who changed the status quo is the employer, the Bays test is employed to review the employer's actions. If the court finds the employer acted reasonably in offering its best and final offer, then the analysis shifts to an examination of whether the employees' response to the offer was reasonable, which is the Zanesville analysis. In other words, the Supreme Court has provided us with a framework which will analyze both parties' actions in turn. It is only logical to place the burden of proof on the actor in each instance, to show its actions were reasonable. The first step must be to determine which party altered the status quo * * * Pursuant to Bays, the parties may change the status quo only after allowing it to exist for a `reasonable time'." Id.
 {¶ 20} The Hearing Officer and Review Commission found that Shield Alloy's imposition of its "final offer" was reasonable based upon a compelling reason and that it was not done to coerce the Union into accepting the offer. Implicitly, the administrative decision also found that the Union's decision to strike was unreasonable.
 {¶ 21} There was no factual dispute that Shield Alloy had been sustaining a loss ever since mid-1998. The Union agreed that concessions were necessary. Moreover, when the company first imposed the "final offer", the Union did not strike. Instead, the Union members continued to work. As of December 8, 2003, the facts indicated that the Union did not just request that it continue working under the expired CBA during negotiations but coupled this with a retroactive pay condition or it would strike, thereby changing the status quo existing at that time. Then Union chose to strike.
 {¶ 22} This resulted in a labor dispute rather than a lockout, making unemployment benefits inapplicable.
 {¶ 23} We find that the decision at the administrative level was supported by the record and was not unlawful or unreasonable.
Boggins, P.J. Edwards, J. concurs separately Hoffman, J. dissents.