OPINION
{¶ 1} Appellants, Windette L. Tietz, Susan F. Fanning, Bonnie J. Davis, Mary W. Jacoway, Nancy K. Lehmann, Kenneth A. Yoho, Ronald O. Pauli, and Bonnie E. Manchester, appeal from the October 7, 2004 judgment entry of the Trumbull County Court of Common Pleas, affirming the decision of the State of Ohio Unemployment Compensation Review Commission ("Review Commission"), which determined that appellants were unemployed as a result of a labor dispute other than a lockout.
 {¶ 2} Appellants, employees of appellee Southington Local School District Board of Education ("Southington"), filed applications for unemployment benefits for the weeks ending August 30, September 13, or September 20, 2003. On September 30, 2003, the director concluded that appellants became unemployed by reason of a lockout at appellee Southington, and allowed appellants to receive unemployment benefits.
 {¶ 3} On October 9, 2003, appellee Southington filed timely appeals, which were transferred by the director to the Review Commission on November 13, 2003. On January 8, 2004, a hearing was held before a hearing officer, who reversed the director's determination and concluded that appellants became unemployed by reason of a labor dispute other than a lockout. Appellants' claims were disallowed.
 {¶ 4} On March 9, 2004, appellants filed an administrative appeal with the Trumbull County Court of Common Pleas pursuant to R.C. 4141.282. Appellants filed a joint brief on June 7, 2004. Appellee State of Ohio Department of Job and Family Services filed its brief on July 1, 2004, and appellee Southington filed a brief on July 9, 2004.
 {¶ 5} The following facts are pertinent to the instant appeal. Appellants were employed by appellee Southington as bus drivers, custodians, or secretaries. Appellants are members of the Ohio Association of Public School Employees ("OAPSE"), Local 673, and the terms and conditions of their employment were governed by a collective bargaining agreement between appellee Southington and OAPSE. The last contract expired on June 30, 2001. During the 2001-2002, and 2002-2003 school years, appellants worked under the terms of the expired contract.
 {¶ 6} Various negotiating sessions commenced before and after the expiration of the contract and the last negotiations occurred on March 26, 2003. The parties were unable to agree on a number of provisions, namely one that provided for payment to employees who opted not to enroll in appellee Southington's health care insurance program.
 {¶ 7} Appellee Southington is a member of a consortium of schools in Trumbull County that have come together to collectively purchase health insurance coverage for their employees in order to negotiate more favorable health insurance premiums. Appellee Southington implemented its best and final offer, dated May 1, 2003, to be effective July 1, 2003.[1]
 {¶ 8} On August 12, 2003, OAPSE filed a notice of its intent to strike with the Ohio State Employment Relations Board ("SERB").[2] On August 25, 2003, appellants and two additional employees, not parties to the instant appeal, engaged in a work stoppage.
 {¶ 9} Pursuant to its October 7, 2004 judgment entry, the trial court affirmed the decision of the Review Commission and "dismissed" appellants' appeal. The trial court indicated that the Review Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. It is from that judgment that appellants filed a timely notice of appeal and make the following assignment of error:
 {¶ 10} "The [t]rial [c]ourt erred as a matter of law when it refused to reinstate [a]ppellants' eligibility to receive unemployment compensation benefits."
 {¶ 11} In their sole assignment of error, appellants argue that the trial court erred by refusing to reinstate their eligibility to receive unemployment compensation benefits. Appellants stress that appellee Southington changed the status quo without justification when it implemented its best and final offer, and, thus, their unemployment compensation benefits should be reinstated. Appellants posit two issues for review. In their first issue, appellants allege that the Review Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. In their second issue, appellants contend that the Review Commission incorrectly decided that their unemployment was the result of a labor dispute other than a lockout.
 {¶ 12} Because appellants' first and second issues are interrelated, we will address them in a consolidated fashion.
 {¶ 13} In Barnes v. Ohio Dept. of Jobs Family Services, 11th Dist. No. 2002-G-2426, 2003-Ohio-1883, at ¶ 19, this court stated that: "[a]n appellate court applies the same standard as the common pleas court when reviewing the Unemployment Compensation Review Commission's just cause determination. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Services
(1995), 73 Ohio St.3d 694, 696-697 * * *. `An appellate court may reverse the Unemployment Compensation Board of Review's "just cause" determination only if it is unlawful, unreasonable or against the manifest weight of the evidence.' Id. at paragraph one of the syllabus. See, also, R.C. 4141.282(H) * * *."
 {¶ 14} Under the foregoing standard, reviewing courts are not permitted to make factual findings or determine the credibility of witnesses, which are instead reserved for decision by the Review Commission. Irvine v. Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 17. The decision of the Review Commission may not be reversed simply because reasonable minds might reach different conclusions from the same evidence. Tzangas, supra, at 697, citingIrvine at 18.
 {¶ 15} R.C. 4141.282(H) provides that: "[t]he court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."
 {¶ 16} R.C. 4141.29(D)(1)(a) states in part that: "* * * no individual may serve a waiting period or be paid benefits * * * [f]or any week with respect to which the director finds that * * * the individual's unemployment was due to a labor dispute other than a lockout * * *."
 {¶ 17} There are two alternative tests for determining if a lockout occurs when employees refuse to continue working after the implementation of a best and final offer.
 {¶ 18} The first test was enunciated in Zanesville Rapid Transit,Inc. v. Bailey (1958), 168 Ohio St. 351. In Zanesville, the Supreme Court of Ohio established a "reasonableness test," which applies when the parties have ceased negotiations and the work stoppage subsequently occurs. "`To constitute a lockout (* * *) the conditions of further employment announced by the employer must be such that the employees could not reasonably be expected to accept them and they must manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms. (* * *)
 {¶ 19} "* * * The real test whether the imposition by the employer of changed conditions of employment is a withholding of work so as to constitute a lockout lies in the question whether the conditions imposed are such that his employees could not be expected to continue work under them and, in reason, they had no other course open to them but to leave their employment.'" Id. at 355, quoting Almada v. Admr., UnemploymentComp. Act (1951), 137 Conn. 380, 389-391.
 {¶ 20} The second test was established in Bays v. Shenango Co.
(1990), 53 Ohio St.3d 132. In Bays, the Supreme Court of Ohio adopted a "status-quo" test which "requires that actions of both the employer and the union be scrutinized in order to ascertain whether the parties sought to maintain the status quo." Id. at 135. "An employer deviates from the status quo if it refuses to allow work to continue for a reasonable timeunder the existing terms and conditions of employment while negotiations continue." (Emphasis sic.) Id.
 {¶ 21} In the case at bar, the evidence in the record demonstrates that appellants became unemployed due to a labor dispute other than a lockout. The Bays "status-quo" test is inapplicable because contract negotiations were at an impasse.[3] Rather, the "reasonableness test" established in Zanesville applies here since the parties ceased negotiations. See Johnson v. Admr., Ohio Bur. of Emp. Services (1993),82 Ohio App.3d 293; Aliff v. Ohio Bur. of Emp. Services (Mar. 9, 2001), 1st Dist. No. C-000238, 2001 Ohio App. LEXIS 994; Aliff v. Dir.,Ohio Dept. of Job and Family Services (Sept. 25, 2001), 10th Dist. No. 01AP-18, 2001 Ohio App. LEXIS 4303.
 {¶ 22} Again, the record shows that the last negotiation session occurred on March 26, 2003, approximately five months prior to the work stoppage. The parties had been unable to reach an agreement for two years following the expiration of the expired contract. No new proposals were advanced by either side after appellee Southington implemented its best and final offer in May 2003.
 {¶ 23} We agree with the Review Commission that the changes imposed, namely the health insurance provisions, were not so unreasonable that appellants had no other course of action open to them but to strike. We note that teachers employed by appellee Southington, as well as employees at other Trumbull County schools, accepted the changes in coverage. The Review Commission had competent, credible evidence to determine that there were no ongoing negotiations at the time of the work stoppage, and, therefore, the Zanesville "reasonableness test" was applicable. In addition, appellee Southington's rapidly increasing insurance premiums coupled with a two and one-half percent decrease in state funding required the implementation of the changes here.
 {¶ 24} Appellants' reliance on Albaugh v. Unemployment Comp.Rev. Comm. (May 11, 2001), 5th Dist. No. 00CA024, 2001 Ohio App. LEXIS 2237, which dealt with the issue of whether the employer waited a reasonable time before changing the status quo, is misplaced. In Albaugh, the employer and the union began negotiating about one month before their collective bargaining agreement expired and continued bargaining for approximately five months before the employer imposed its final offer. Also, Albaugh involved continuing negotiations after the imposition of the employer's final offer. The court in Albaugh determined that if the employer acted reasonably in offering its best and final offer, then the analysis shifts to an examination of whether the employees' response to the offer was reasonable. Id. at 8.
 {¶ 25} In the case here, however, the parties began negotiating about two and one-half months before the expiration of their collective bargaining agreement and continued under the expired agreement for an additional two years. In addition, in the instant matter, there is no record of any continuing negotiations after the imposition of appellee Southington's best and final offer. Also, appellants' response to appellee Southington's best and final offer was not reasonable. Only a minority of the bargaining members elected to withhold their services as a result of the implementation of the new health benefit program. A majority of the bargaining unit that was involved in the work stoppage abandoned the strike within a day or two and returned to work.
 {¶ 26} We agree that the work stoppage did not constitute a lockout and that appellants were not entitled to unemployment compensation.
 {¶ 27} Appellants' first and second issues are without merit.
 {¶ 28} For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
O'Neill, J., O'Toole, J., concur.
[1] Under the expired contract, employees could receive between $4,750 and $6,550 if they elected to opt out of insurance coverage. Under the implemented contract, payments to individuals opting out of health insurance were capped at fifty percent of appellee Southington's 1995 premium rate for individuals employed prior to January 1, 2003, which amounted to approximately $3,500. For individuals hired after January 1, 2003, the amount of payment was limited to $1,400.
[2] Prior to issuing its strike notice, OAPSE filed an unfair labor practice charge with SERB, which was dismissed without prejudice on September 18, 2003. SERB concluded that the implementation of the May 1, 2003 offer did not constitute a violation of law under R.C. 4117.11.
[3] Appellee Southington's best and final offer indicated that the parties were at an impasse.