[Cite as *Abel v. ADP/UC Express*, 193 Ohio App.3d 247, 2011-Ohio-1649.]


STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| ABEL ET AL., | ) | |
| | ) | |
| APPELLEES, | ) | |
| | ) | |
| v. | ) | CASE NO. 10-CO-11 |
| | ) | |
| ADP/UC EXPRESS AS AMERICA, INC., | ) | OPINION |
| ET AL., | ) | |
| | ) | |
| APPELLANTS. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas
of Columbiana County, Ohio
Case No. 09CV659


JUDGMENT:                                    Affirmed


APPEARANCES:

Todd M. Smith, for appellees.

Gust Callas, for appellants.


JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


Dated: March 23, 2011

DONOFRIO, Judge.

{¶ 1} Defendant-appellant, American Standard Brands, Inc., appeals from a Columbiana County Common Pleas Court judgment that awarded plaintiffs-appellees, Frank Abel et al., unemployment-compensation benefits. The court's judgment reversed the prior decisions of the hearing officer and the Unemployment Compensation Review Commission.

{¶ 2} American Standard ("the company") manufactures bathroom fixtures, tubs, and sinks at its plant in Salem, Ohio. Appellees in this case are a group of 245 employees of American Standard and members of the United Steelworkers of America, Local 1538 ("the employees"). This case deals with the collective-bargaining agreement ("CBA") that expired on September 30, 2008, the negotiations for a new CBA, and the work stoppage that occurred from October 17 through November 22, 2008.

{¶ 3} The employees filed for unemployment-compensation benefits alleging that they were unemployed due to a lockout. A hearing was held on November 10, 2008. The hearing officer made the following findings of fact.

{¶ 4} The parties attended negotiation sessions from September 11 through September 30 and also met on October 13 and 17. They agreed to two extensions of the expired CBA through October 15, 2008. On that day, the company implemented its last, best, and final offer based on its assertion that negotiations had reached impasse. The union responded with a 48-hour strike notice and asserted that there was no impasse. The employees worked under the implemented terms on October 16 and 17 and stopped working at 1:00 p.m. on October 17. At the time of the hearing, the work stoppage continued.

{¶ 5}  The company had been operating at a loss since 2006.  It was formerly a much larger international corporation with over $11 billion in annual sales.  But in 2007, the American Standard Plumbing International portion of the corporation was sold to Bain Capital, a private equity firm.  Less than a month later, another private equity firm, Sun Capital, purchased a controlling interest of the American Standard Plumbing Americas portion from Bain.  American Standard Plumbing Americas portion includes the Salem plant at issue.  The American Standard Plumbing Americas is not profitable.  The unaudited financial information showed an $88.8 million loss in 2007.  This information also showed an approximate loss of $5.4 million for the Salem plant through July 2008.  Consequently, Sun Capital stated that each location that is part of American Standard Plumbing Americas must stand alone and operate at a profit in order to be a sustainable business.

{¶ 6}  In July 2008, the company made a presentation to the union, along with written documentation, about its financial status.  A profit-improvement plan was prepared by the company and given to the union.  This plan presumed a ten-percent wage-concession package.  The last, best, and final offer made by the company included a five-percent wage concession package that reduced the average wage from $17.90/hour to $17.00/hour and the wage-plus-benefits rate from $27.91/hour to $25.50 to $26.00/hour.

{¶ 7}  The hearing officer found that the work stoppage was not a lockout, and therefore, the employees were not entitled to collect unemployment benefits.  He found that the company was the party that had changed the status quo when it determined to

not allow the employees to work under the terms of the expired CBA. He further found, however, that the company had a compelling reason to implement the last, best, and final offer, given the uncontroverted testimony regarding the company's financial position.

**{¶ 8}** The employees filed an appeal with the review commission on December 15, 2008. In the meantime, the hearing officer issued an entry taking administrative notice that the employees returned to work the week of November 23, 2008. Therefore, he concluded that the work stoppage ended on November 22, 2008. The review commission disallowed the employees' appeal by decision dated May 20, 2009.

**{¶ 9}** The employees filed an appeal in the trial court on June 18, 2009.

**{¶ 10}** The trial court determined that the hearing officer's decision was unlawful. It determined that only one test, set out in *Bays v. Shenango Co.* (1990), 53 Ohio St.3d 132, applied in determining whether the work stoppage constituted a "labor dispute" or a "lockout." The trial court found that the hearing officer applied the wrong test, set out in *Zanesville Rapid Transit, Inc. v. Bailey* (1958), 168 Ohio St. 351, when determining which party deviated from the status quo. The trial court determined that because the company refused work under the preexisting CBA, the work stoppage was a lockout and not a labor dispute. Accordingly, it found that the employees were entitled to unemployment benefits for the term of the lockout.

**{¶ 11}** The company filed a timely notice of appeal from the trial court's judgment on March 3, 2010. It now raises four assignments of error. The same standard of review applies to all assignments of error.

{¶ 12} A claimant bears the burden of proving his entitlement to unemployment-compensation benefits. *Kosky v. Am. Gen. Corp.,* 7th Dist. No. 03-BE-31, 2004-Ohio-1541, at ¶ 9. An unsatisfied claimant may appeal the review commission's decision to the trial court. R.C. 4141.282(A). The trial court shall reverse, vacate, modify, or remand the commission's decision if it finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). If the court does not find that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, then the court shall affirm the decision. Id.

{¶ 13} A party unsatisfied with the trial court's decision may appeal to the court of appeals. The appellate court, like the trial court, is generally limited to reviewing whether the decision is supported by evidence in the record. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696, citing *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18.

{¶ 14} With this standard of review in mind, we turn now to the company's assignments of error, the first of which states:

{¶ 15} "The trial court erred in finding that *Bays* is the sole test for determining whether a lockout has occurred for purposes of unemployment compensation."

{¶ 16} R.C. 4141.29(D)(1)(a) provides:

{¶ 17} "(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

{¶ 18} "(1) For any week with respect to which the director finds that:

{¶ 19} "(a) The individual's unemployment was due to a labor dispute other than a lockout * * *."

{¶ 20} Therefore, an employee who is unemployed due to a labor dispute is entitled to unemployment compensation only if the labor dispute is a "lockout." A "lockout" is "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." *Zanesville*, 168 Ohio St. at 354, 7 O.O.2d 119, 155 N.E.2d 202.

{¶ 21} The company argues that the trial court erred by concluding that the "status quo" test set out in *Bays*, 53 Ohio St.3d 132, is the "sole test" for determining whether a lockout has occurred. The company urges us to apply *Zanesville* and *Oriti v. Ohio Bur. of Emp. Servs.* (1983), 7 Ohio App.3d 311, in conjunction with *Bays* to determine whether a lockout occurred. It asserts that the trial court misapplied this court's decision in *Abate v. Wheeling-Pittsburgh Steel Corp.* (1998), 126 Ohio App.3d 742, because we never stated that the *Bays* test was the sole test for determining whether a lockout had occurred. The company further points out that this court in *Agich v. Ohio Bur. Emp. Servs.* (June 8, 1993), 7th Dist. No. 92-C-41, applied both *Bays* and *Zanesville,* thus contradicting the notion that the *Bays* test is the sole test.

{¶ 22} The hearing officer cited three cases in its decision: *Zanesville*, *Oriti*, and *Bays*. He then concluded that *Zanesville* and *Oriti* best applied to the facts of this case. He further noted that the Ohio Supreme Court discussed them both in *Bays,* and neither had been overruled. The trial court found that the hearing officer's reliance on *Zanesville* and *Oriti* was unlawful because it should have applied *Bays*, which it found

set out the status quo test as the sole test to be used to determine whether a work stoppage is a lockout. Thus, we must carefully review each of these cases along with the pertinent cases from our district to determine the appropriate test in this case.

{¶ 23} In *Zanesville*, 168 Ohio St. 351, the Ohio Supreme Court was faced with the sole question of whether a labor dispute other than a lockout had occurred. Quoting *Almada v. Admr., Unemp. Comp. Act* (Conn.1951), 77 A.2d 765, 771, the court first stated:

{¶ 24} " 'The imposition by the employer of changes in working conditions or wages, even though they deprive the employees of some advantage they already possess, does not necessarily constitute a lockout. Changes in the terms of employment might still be such that under all the circumstances the employees would be expected in reason to accept them rather than quit work. To constitute a lockout * * * the conditions of further employment announced by the employer must be such that the employees could not reasonably be expected to accept them and they must manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms. * * *

{¶ 25} "'The point is that, in order to constitute a lockout, the conduct of the employer in laying down terms must lead to unemployment inevitably in the sense that the employees could not reasonably be expected to accept the terms and, in reason, there was no alternative for them but to leave their work. The real test whether the imposition by the employer of changed conditions of employment is a withholding of work so as to constitute a lockout lies in the question whether the conditions imposed

are such that his employees could not be expected to continue work under them and, in reason, they had no other course open to them but to leave their employment.' " *Zanesville*, 168 Ohio St. at 354-355.

{¶ 26} The court found that in light of the facts that (1) for at least two-and-a-half months before the expiration of the contract, the union was aware of the straitened circumstances of the company and of its intention not to continue the contract and (2) Zanesville was a public utility dependent on the action of city council in negotiating a franchise in the city, the ten-percent wage cut announced by the company was not unreasonable and did not manifest a purpose on the part of the company to coerce the employees into accepting it. Id. at 355-356.

{¶ 27} In *Oriti*, 7 Ohio App.3d 311, the employer refused to extend the terms of the collective-bargaining agreement while negotiations continued. The Eighth District Court of Appeals determined that the "status quo" principle should be applied in determining whether a work stoppage is a lockout. Id. at 314. It stated that the status quo principle was consistent with *Zanesville*, in which it was demonstrated that the maintenance of the status quo would result in serious financial hardship to the employer, or in other words, would have been unreasonable. Id. The court continued:

{¶ 28} "[W]here employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout unless it is demonstrated that the employer has a compelling reason for failing to so agree such that the extension of the contract would be unreasonable under the circumstances." Id.

{¶ 29} In reaching this holding, the Eighth District also relied in large part on a Pennsylvania Supreme Court decision stating:

{¶ 30} " 'In the very delicate and sensitive negotiations which are involved in the development of a new collective bargaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. Neither an adamant attitude of "no contract, no work" on the part of the employees, nor an ultimatum laid down by the employer that work will be available only on his (employer's) terms, are serious manifestations of a desire to continue the operation of the enterprise. While either or both of these positions may legitimately be taken by the parties during the bargaining negotiations prior to the expiration of the existing contract, when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under * * * the Unemployment Compensation Law, * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification of unemployment

compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.' " Id. at 312-313, quoting *Vrotney Unemp. Comp. Case* (1960), 400 Pa. 440, 443-445.

{¶ 31} Like the other cases, in *Bays,* the central dispute was whether a work stoppage was due to a lockout or a strike. The Ohio Supreme Court first traced the history of the status quo test back to *Baker v. Powhatan Mining Co.* (1946), 146 Ohio St. 600, in which the court relied on *Sandoval v. Indus. Comm.* (1942), 110 Colo. 108, in determining whether employees had engaged in a strike. *Bays*, 53 Ohio St.3d at 134. *Sandoval* had looked at which party, the employer or the union, had changed the status quo. Id. *Bays* stated that the status quo test was fully developed in *Vrotney Unemp.* 400 Pa. 440. The court quoted the same language from *Vrotney* that *Oriti* relied on. Id. at 134-135. *Bays* next pointed out that the Eighth District Court of Appeals adopted this test in *Oriti.* Id. at 135. It also quoted the portion of *Oriti's* holding using the "compelling reason" language. Id. at 135.

{¶ 32} *Bays* analyzed the facts of its case. It found that the employer had refused to allow work to continue for a reasonable time under the terms of the existing contract while negotiations continued. Id. In the same paragraph the court, citing *Oriti*, stated: "We also note that the record contains no evidence that Shenango [the employer] had a compelling reason to refuse to maintain the status quo." Id. The court then continued to find that the union had offered to maintain the status quo. Id. at 136. Consequently, the court reversed the judgment of the court of appeals and reinstated the trial court's judgment that had allowed unemployment benefits for the employees.

{¶ 33} This court applied the status quo test in *Abate*, 126 Ohio App.3d 742. We first quoted the *Zanesville* test. Id. at 750. Next, we quoted *Bays'* quotation of the *Vrotney* test, starting with the statement, "[T]he sole test * * * is reduced to the following" and going on to set out the status quo test. Id. We did not mention the compelling-reason exception. However, there was no reason to reach the compelling-reason exception. The issue in *Abate* was whether the trial court had misapplied the status quo test when it considered whether the employer had actually offered to extend the existing contract. Id. at 749. The issue before us did not involve whether to apply *Zanesville*, *Bays,* or both.

{¶ 34} In *Agich*, 1993 WL 205003, which predated *Abate*, we stated the *Bays* test as follows: "[A]n employer alters the status quo when it does not offer to continue or agree to a continuation of existing work conditions unless the employer has a compelling reason for failing to so agree." We found that the employees were the first ones to alter the status quo. We relied on both *Bays* and *Zanesville*.

{¶ 35} In neither case did we directly address whether *Bays* was the sole test.

{¶ 36} The appellate districts are divided on the question of how to apply the *Bays* and *Zanesville* tests. The districts that have directly addressed the issue have adopted one of two approaches.

{¶ 37} The First, Second, Sixth, Eighth, Tenth, and Eleventh Districts have determined that *Zanesville* and *Bays* present two alternative tests, depending on the facts of the case. They have held that when the parties have ceased negotiating and reached impasse, the *Zanesville* "reasonableness" test applies. But when negotiations

are ongoing between the parties, the *Bays* status quo test applies. See *Aliff v. Ohio Bur. Empl. Serv.* (Mar. 9, 2001), 1st Dist. No. C-000238; *Johnson v. Ohio Bur. Emp. Serv.* (1993), 82 Ohio App.3d 293, 298-299; *Baker v. Ohio Unemp. Comp. Rev. Comm.*, 6th Dist. No. L-01-1503, 2002-Ohio-3154; *Aliff v. Unemp. Comp. Rev. Comm.*, 8th Dist. No. 80767, 2003-Ohio-1155, at ¶ 17; *Aliff v. Ohio Bur. of Emp. Serv.*, 9th Dist. No. 20828, 2002-Ohio-2642, at ¶ 14; *Aliff v. Dir., Ohio Dept. of Job & Family Servs.* (Sept. 25, 2001), 10th Dist. No. 01AP-18; *In re Claim of Tietz v. Ohio Dept. Job & Family Servs.*, 11th Dist. No. 2004-T-0132, 2005-Ohio-4767, at ¶ 18-21.

**{¶ 38}** In contrast, the Third and Fifth Districts have held that *Bays* and *Zanesville* must be applied together. The Fifth District Court of appeals held:

**{¶ 39}** "Although the *Bays* court cited *Zanesville*, it did not overrule it, nor did it explain when to apply *Bays* and when to apply *Zanesville*. We must review both cases to determine how they can be construed together. At the outset, we find they both present a reasonableness standard. *Bays* deals with situations where the status quo has been changed, and directs us to determine whether the party who changed the status quo acted reasonably. If the party who changed the status quo is the employer, the *Bays* test is employed to review the employer's actions. If the court finds the employer acted reasonably in offering its best and final offer, then the analysis shifts to an examination of whether the employees' response to the offer was reasonable, which is the *Zanesville* analysis. In other words, the Supreme Court has provided us with a framework which will analyze both parties' actions in turn. It is only logical to place the burden of proof on the actor in each instance, to show its actions were reasonable. The

first step must be to determine which party altered the status quo * * *. Pursuant to *Bays*, the parties may change the status quo only after allowing it to exist for a 'reasonable time.' " *Albaugh v. Unemp. Comp. Rev. Comm.* (May 11, 2001), 5th Dist. No. 00CA024.

{¶ 40} And the Third District reasoned:

{¶ 41} "[W]e find that both *Bays* and *Zanesville* define lockout generally as 'a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms.' *Bays* supplements this test with the status quo test which we accept as the general rule. However, *Bays* provides an exception which allows an employer to deviate from the status quo for a compelling reason. We find that once it has been established that the employer deviated from the status quo for a compelling reason, *Zanesville* confines the application of this exception to circumstances where the employees would be expected in reason to accept [the terms] rather than quit work. See, generally, *Albaugh,* supra. Consequently, even if the employer has a compelling reason to deviate from the status quo, if that change is so drastic that it would be reasonably expected that the employee would quit rather than accept the change, then the employer's deviation from the status quo constitutes a lockout." *Minster Machine Co. v. Albers*, 3d Dist. No. 2-03-05, 2003-Ohio-4355, at ¶ 15.

{¶ 42} The approach taken by the majority of our sister districts is more persuasive. It is a much simpler and more direct approach that leaves little room for confusion. The only preliminary question that must be determined is whether negotiations are ongoing or the parties have reached impasse. Once this determination

is made, the test to apply is clear. Furthermore, had the Supreme Court intended to combine both tests into one, it would seem that it would have made this clear in *Bays*. Instead, the court set out the status quo test as the test to be used while negotiations are ongoing. This left the *Zanesville* test to be applied when negotiations have ceased.

{¶ 43} Based on the above, the trial court did not err in stating that the *Bays* status quo test is the sole test for determining whether a lockout has occurred in this case.

{¶ 44} Turning to the facts of the present case, the hearing officer found that impasse had not been reached, even though the company had given its last, best, and final offer because the employees were willing to maintain the status quo and keep negotiating. Neither party has disputed this factual finding. Because the parties had not reached impasse, the *Bays* status quo test is the applicable test in this case.

{¶ 45} Accordingly, the company's first assignment of error is without merit.

{¶ 46} The company's second assignment of error states:

{¶ 47} "The trial court erred in failing to apply the 'compelling reason' exception to the *Bays* status quo test."

{¶ 48} Here, the company argues that if *Bays* is the sole test in this case, the trial court still erred in failing to apply the "compelling reason" exception to the *Bays* status quo test. It contends that both the Ohio Supreme Court (in *Bays*) and this court (in *Agich*), along with several other appellate districts, recognize an exception to the status quo test when a compelling reason exists for refusing to maintain the status quo.

**{¶ 49}** The company points out that the hearing officer found that it did have a compelling reason for failing to maintain the status quo, that being that the company was facing a dire economic situation. It points out that the trial court did not discredit this finding of fact. It further asserts that the trial court failed to even consider this exception or whether it applied in this case despite arguments by both sides.

**{¶ 50}** A compelling-reason exception does exist to the *Bays* status quo test. First, as discussed above, *Bays* specifically quoted the compelling-reason language from *Oriti*. *Bays*, 53 Ohio St.3d at 135. It then made a specific finding that the employer in that case had no compelling reason to deviate from the status quo. Id. Second, this court specifically stated that the *Bays* status quo test included the compelling-reason exception. *Agich*, 1993 WL 205003. Our decision is further supported by *Minster Machine*, 3d Dist. No. 2-03-05, at ¶ 11, and *Baker v. Ohio Unemp. Comp. Rev. Comm.*, 6th Dist. No. L-01-1503, 2002-Ohio-3154, at ¶ 14, which both found that the compelling-reason exception was part of the *Bays* test. Thus, the trial court should have considered the compelling-reason exception in this case.

**{¶ 51}** But the hearing officer's decision finding the compelling-reason exception applicable was not supported by competent, credible evidence. In order to qualify for the compelling-reason exception, the company had to establish that the parties could not have continued under the terms of the expired CBA until a new one had been negotiated. *Oriti*, 7 Ohio App.3d at 315. The company further had to show that it was in such straitened financial circumstances that it would have been unreasonable to extend the expired CBA. Id. Here, the company did not meet this burden.

{¶ 52} The company did offer evidence as to its financial problems. For instance, the evidence demonstrated that in July 2008, the company made a presentation to the union, including supporting documentation, about the poor financial status of the Salem Plant. And the unaudited financial information showed that the company had been operating at loss for the last several years, including a $5.4 million loss in 2008. The company also presented evidence that since the acquisition by Sun Capital, the Salem Plant was required to stand alone and make a profit. Consequently, and at the request of the union, the company prepared a Salem Plant Gross Improvement Plan document. This document reflected an example of how the company planned to achieve the 25 percent gross profit required by Sun Capital. It included 2.4 percent to come from contract concessions. The plan included an expected ten-percent wage concession.

{¶ 53} The hearing officer found that the above testimony was credible and uncontroverted. However, this evidence fails to rise to the level of "such straitened financial circumstances that it would have been unreasonable to extend" the expired CBA. At the time the company made its last, best, and final offer, the parties had been negotiating for only a little over a month, and the contract had been expired for only two weeks. There was no evidence that if the company continued to operate under the terms of the expired CBA for a few additional weeks, it would have resulted in catastrophic financial consequences. Simply because the company was operating at a loss and needed to increase its profits does not mean that it could not have continued under the expired CBA for at least a short period of time while negotiations continued.

{¶ 54} Accordingly, the compelling-reason exception does not apply here. The company's second assignment of error is without merit.

{¶ 55} The company's third and fourth assignments of error share a common basis. Therefore, we will address them together. They state:

{¶ 56} "The trial court erred in modifying the decision of the hearing officer and review commission when that decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶ 57} "The trial court erred in modifying the decision of the hearing officer and review commission because even if the hearing officer and review commission erred, such error was harmless."

{¶ 58} The trial court found that the hearing officer incorrectly applied the *Zanesville* reasonableness test rather than strictly applying the *Bays* case and that doing so was unlawful.

{¶ 59} The company argues that the trial court's finding of unlawfulness was incorrect. First, it again asserts that neither this court nor the Ohio Supreme Court has held that *Bays* is the sole test to be applied. Second, it asserts that the hearing officer applied the status quo test, just like the trial court, choosing instead to cite *Oriti* but applying the exact same test. Thus, it contends that any error here was harmless. Finally, the company urges that the hearing officer did not err in applying *Zanesville* and *Oriti* because *Bays* cites both of these cases with approval.

{¶ 60} As discussed in detail above, the *Bays* status quo test is the sole test to be applied in this case, given the hearing officer's finding that the parties had not

reached impasse. The hearing officer, however, determined that *Zanesville* and *Oriti* best applied to the facts in this case and did not apply *Bays*. The hearing officer determined that under *Zanesville*, there was no lockout because the company would have allowed the employees to continue working under the terms of its last, best, and final offer, which was reasonable under the circumstances. And applying *Oriti*, the hearing officer found that the company had a compelling reason to implement its last, best, and final offer. While the company is correct that *Bays* relied in part on *Oriti*, in setting forth the status quo test, the hearing officer used only *Oriti* to find that the company had a compelling reason to implement its last, best, and final offer and it did so after finding that under the *Zanesville* reasonableness test, there was no lockout. Thus, we agree with the trial court that the hearing officer applied the wrong test.

{¶ 61} But our analysis does not end here. The hearing officer's decision was also unreasonable because it found that the compelling-reason exception was applicable under the facts of this case. As we discussed in appellant's second assignment of error, the evidence presented did not demonstrate that the company could not have continued under the terms of the expired CBA until the parties negotiated a new collective-bargaining agreement. The company's evidence regarding its financial position did not show that it would have been unreasonable to extend the expired CBA while negotiations were ongoing. The parties had been negotiating for only a little over a month, and the contract had been expired for only two weeks. A few additional weeks of negotiating would not have resulted in disastrous consequences.

Consequently, the hearing officer should not have applied the compelling-reason exception in this case.

**{¶ 62}** Because the hearing officer applied the incorrect test and because he also found that the facts of this case met the compelling-reason exception, we find the hearing officer's decision to be unlawful and unreasonable.

**{¶ 63}** Accordingly, the company's third and fourth assignments of error are without merit.

**{¶ 64}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and VUKOVICH, .J., concur.